VANCE *vs.* TOURNE AND BECKWITH.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE WATTS PRESIDING.

In commutative contracts it is the duty of the party claiming damages for non-performance, to show that he offered to perform his part, at the time implied in the contract, and that he has put the adverse party in default. This is a pre-requisite to the recovery of damages.

$$\begin{array}{rr} 13 & 225 \\ 115 & 836 \\ \hline 13 & 225 \\ 122 & 73 \end{array}$$

The damages at the time of the default or breach of the contract, are the only damages that can be recovered.

In an action by the vendee, for the breach of a contract of sale by the vendor, in not delivering the article, the measure of damages is the *price* of the article *at the time* of the breach of the contract. *Shepherd et al.* vs. *Hampton,* 3 *Wheaton,* 200.

The facts and pleadings in this case, are fully stated in the following opinion and judgment, of the district judge who presided at the trial :

" This is a suit for non-compliance with a stock contract. The petition alleges that Tourné & Beckwith are indebted to Vance in two thousand eight hundred dollars for this : that on 24th June, 1834, Vance purchased from Tourné & Beckwith, four hundred shares of Mechanics' and Traders' bank stock, at twenty-six dollars per share for thirty dollars paid. That Vance is, and was always, ready to pay the price, but that Tourné & Beckwith refused to comply with their contract, as the stock was rising in the market, and although Vance was always insisting on his contract, they have refused. That twenty dollars per share has since been paid on the contract, and Tourné & Beckwith have since sold the four hundred shares so belonging to petitioner, Vance, for fifty dollars per share; and Vance claims the seven dollars per share profit. This petition was filed on 9th July, 1835, more than one year after the alleged contract.

" The answer is a general denial.

" It appears that on 24th June, 1834, Tourné & Beckwith signed a memorandum, by which they say : ' We have sold to J. Kilty Smith four hundred shares of Mechanics' and

29      VOL. XIII.

EASTERN DIST. Traders' bank stock, upon which thirty dollars has been paid,
*April*, 1839. at twenty-six dollars per share for the thirty.'

VANCE       "It also appears that Smith was the broker of Vance; that
*vs.*      on the stock generally, on 24th June, 1834, the full share of
TOURNE ET AL. fifty dollars was paid up, but that Tourné & Beckwith were
in default for twenty dollars of instalments.

"I also consider that twenty-six dollars per share for
thirty dollars paid, was on 24th June, 1834, the correlative
value of forty-seven dollars for fifty dollars paid; and that
these were the market prices of the stock; the thirty dollar
stock not being entitled to dividend, was proportionally of
less value than the fifty dollar stock.

"The cashier and president of the bank refused to allow
of the transfer, having taken a pledge of the stock for money
borrowed on it; but with a clause similar to that which has
been declared illegal, in the case of *The Syndics of Yard &
Blois* vs. *The Mechanics' and Traders' Bank.* This debt and
the remaining instalments were to be paid by Vance at the
time of transfer, but Tourné & Beckwith had other engage-
ments with the bank, in which the bank had vested the
stock.

"Vance, through Smith, made a written demand of the
stock shortly afterwards, but at what date in particular,
Smith is unable to prove; nothing further was done by
Tourné & Beckwith, nor by Vance; the terms of this demand
in writing, are not proved. Vance instituted this suit, as we
see, a year after the agreement.

Vance proves that Tourné & Beckwith sold four hundred
shares of Mechanics' and Traders' Bank, on 4th February,
1835, at fifty-two dollars and fifty cents for fifty dollars paid.

"Notwithstanding the very ingenious and specious way in
which the petition is drawn, this action is and can be no
other than an action for non-fulfilment of a stock contract.
As there was no future time fixed for delivery or transfer of
the stock, it was to be delivered and transferred immediately,
and if Tourné & Beckwith did not immediately transfer the
stock, Vance had a right to go into the stock market and
buy an equal quantity, and, if he had paid higher for it,
Tourné & Beckwith were bound to pay the difference.

"The rule of damages in all cases where the non-fulfilment of contracts resolves itself into damages, is the amount of that damage at the time when the contract is broken; and in stock transactions, it is susceptible of exact measurement. I consider this rule so much of an elementary principle, that I do not find it necessary to cite authorities for it. There is a time fixed when the damages are to be computed, and that time is the moment when the contract was violated; neither party is to be subject to the consequences of the fluctuations of the price of the article. If the contract had been for a future time and the price had fallen, Vance could not be compelled to pay, as difference, any thing more than at the rate of price at which the stock could be sold at the time fixed for delivery; nor *vice versa*, as buyer, could he claim more.

"If for ten days after the 24th June, 1834, Vance could buy the same stock at the same price, it would be difficult to say he had suffered any damage.

"A memorandum has been furnished of the price current rates of this stock, from which it appears that up to 12th July, 1834, the price of the stock remained the same as on the 24th June, 1834; and if Vance meant to supply himself with stock at the cost of difference, it ought to have been done within that time. It appears to me that the contract was broken as soon as made, in consequence of the obstacles opposed by the bank to the transfer of the stock; and as Vance could for some days after have supplied himself with stock at the same price, I cannot perceive that he has suffered any damage, and he can take nothing by his suit, it is *injuria absque damno*.

"It is, therefore, considered, that there be judgment for the defendants, and that the plaintiff pay the costs of suit."

From this judgment the plaintiff appealed.

*L. Peirce*, for the plaintiff and appellant. If the plaintiff and defendants had agreed through the broker upon the number of shares of stock and the price, the sale was complete; there was no necessity for delivery to perfect it. *Louisiana Code, article* 2431.

2. If the sale was complete, the four hundred shares belonged to the plaintiff, and not to the defendants.

3. If the defendants sold these shares, they sold the property of the plaintiff, and must pay him what they received for the sale of his property.

4. It was not the plaintiff who was to put the defendants *in morâ;* it was the latter who should have put Vance, the plaintiff, before they could have a pretence of ownership of the property sold.

*D.* and *J. Seghers, contra.*

*Eustis, J.,* delivered the opinion of the court.

The petitioner alleges, that on the 24th of June, 1834, he purchased from the defendants four hundred shares of the Mechanics' and Traders' Bank stock ; that he has always been ready to pay the price, and has offered to do so, but that the defendants refused to comply with their contract, as the stock was rising in the market, and to deliver said shares of stock, although the plaintiff has continually insisted on the delivery of the same ; that the stock was afterwards sold by the defendants, at a sum exceeding by twenty-eight hundred dollars the price agreed to be paid by him, which amount is said to have been lost to the plaintiff, by the non-compliance with their contract on the part of the defendants; for this amount suit is brought.

The defendants pleaded the general issue ; there was judgment for them, and the plaintiff has appealed.

The defendants on the 24th of June, 1834, sold to John K. Smith, four hundred shares of stock as charged in the petition. On the fourth of February, 1835, they sold the stock to Beers, St. John & Co. at a large profit above the price to be given for the stock at the first sale.

Smith, who was a broker, says in his examination, that he purchased the stock on account of plaintiff, and disclosed his principal to the defendants immediately after the sale. On the day of the sale, he thinks, he went with one of the defendants to the bank, and the president of the bank refu-

sed to permit the transfer to be made, as the stock was
pledged, and he believes he said to the defendant that the
delay occasioned by the bank refusing to make the transfer
would be a matter of no consequence. He afterwards spoke
to the defendants, but does not recollect the time; thinks it
was during the summer; stated to them that plaintiff was
urging him to have the transfer made. He recollects hav-
ing written a note, which was delivered to the defendants,
about the transfer, but does not recollect at what time; says
it was not so long as twelve months after. He has frequently
told the defendants that the plaintiff held the defendants
responsible. Plaintiff has constantly urged his claim to the
stock.

Assuming all these facts to be true, we think the plaintiff
cannot recover. It was his duty to have put the defendants
in default. In commutative contracts, this is a "pre-requi-
site to the recovery of damages." He ought, at the time
implied in the contract, to have offered to perform that which
on his part was to be performed. *Louisiana Code, articles*
1906, 1907, 1908.

*In commutative contracts, it is the duty of the party claiming damages for non-performance, to show that he offered to perform his part, at the time implied in the contract, and that he has put the adverse party in default.*

On a contract like this, the damages *at the time* of the
default, or the breach of the contract, are the only damages
which the plaintiff can recover. *3d Wheaton*, 200.

*This is a pre-requisite to the recovery of damages.*

We have before us memoranda of the value of the stock of
this bank for several months after this transaction, and
admitting that the defendants were put in default, as the
time of the default which ought to have been fixed is
entirely uncertain, we cannot determine that the plaintiff
suffered any damage which did not result from his own neg-
lect, in not taking proper measures at a proper time, for the
enforcement of his contract.

*The damages at the time of the default or breach of contract, are the only damages that can be recovered.*

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.