BARTHELEMY SERIS *v.* BELLOCQ, NOBLOM & Co.

When goods, produce, or other objects are not sold in a lump, but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things sold are at the risk of the seller, until they be weighed, counted or measured; but the buyer may require either the delivery, or damages, in case of the non-execution of the contract.

If the object to be given is uncertain, it is at the risk of the creditor only from the time he is in legal default for not receiving the thing after it has been tendered.

Damages are properly assessed by the judge *a quo* at the time the defendants were put in default.

APPEAL from the Sixth District Court of New Orleans, *Howell*, J. *A. Lavisson for plaintiff.*—This cause was first decided adversely to plaintiff in the lower court, and came up again for a new trial on the 28th of May, 1863, upon the grounds contained at page 18 of transcript, which resulted in a judgment for plaintiff, condemning the defendants *in solido* to deliver to him, within ten days from the signing of the judgment, 18 bales of cotton of the middling quality, and weighing in the aggregate 8,050 pounds; and in default thereof, to pay to plaintiff the sum of $1,690 50, being at the rate of 21 cents per pound, and costs of suit, etc.; from which judgment the present appeal was taken by the defendants.

The plaintiff, in answering to this appeal, admits, as to the facts and law of the case, that the judgment of the lower court is correct, but complains, that from the evidence adduced a greater rate as the price of said cotton, in the event of its non-delivery, ought to have been allowed, to wit: sixty instead of twenty-one cents. That in this only the court erred, and prays that the same be amended accordingly.

The only question of importance involved in this case is that of delivery. The facts, supported by the evidence, are these : The appellee contracted with the appellants on the 11th March, 1862, in New Orleans, for 18 bales of cotton, at the rate of 10 cents per pound, and in order to assure him of the delivery and possession of the same paid $800 in advance, supposing it to be the proximate value at which the 18 bales would come to, for which the appellants gave him a receipt, stating the number of bales, the rate, and deliverable at the Mississippi Cotton Press. In a few days after, to wit, on the 17th of March, 18 bales of cotton, of two different marks, are supposed to have been weighed by A. Hoffman, the superintendent of that press, and each bale and their respective weights noted in pencil in the weighing book, and by him returned to the office of appellants. Two or three days after, Hoffman made an entry, which he calls "an entry of transfer," in the black book of the press. Underneath, or at the foot of this entry, are the words, "to be sold by B. N. & Co., for account of buyer." It will be observed that these words are noted in lead pencil. In the same manner are noted all the entries in the weighing book in reference to this matter.

It must be borne in mind, that in this transaction there was no broker employed on either side. Thus remained the condition of things for nearly six weeks, when, on the eve of the arrival of the national forces in

New Orleans, on the 24th or 25th of April, 1862, the then Confederate authorities ordered all the cotton at that press, numbering about 1,000 bales, to be turned out and burnt.

It is now contended by the appellants that the 18 bales of cotton thus weighed on the 17th March, 1862, and entered in the black book of the press three days after the weighing, and in the manner and form before stated, were intended for and constituted, without further notice, a valid delivery to appellee, and that the cotton perished at his risk.

Under the facts and circumstances of this case, we cannot admit the logic of such reasoning. It is repulsive to every sense of right and justice; and, in a commercial point of view, in direct opposition to every principle of good faith and fairness, which ought to prevail in all mercantile transactions of this kind. The law does not consider that as done which has not been legally done. If custom in certain cases be invoked, as in this case, it must be fully established by evidence. *Senac v. Pritchard,* 4 L. 160; *Syson v. Laidlow,* 18 L. 382.

We deny : 1. That there ever was any cotton weighed for us from the 11th of March to the 25th of April, 1862, or at any time subsequent. 2. That the weighing of the 18 bales, on the 17th March, 1862, were not designed or intended for us. 3. That the manner and form of the so-called "entry of transfer" in the black book of the press, is not in conformity to established customs and usages, and therefore too indefinite and uncertain to operate a delivery to any one. That under it the appellants intentionally retained in them the ownership and control of said cotton. 4. That supposing the "entry of transfer" be held good, and that the 18 bales of cotton thus weighed were intended for appellee, still we contend that, under the facts and circumstances of the case, it was insufficient in itself to operate a tradition or delivery to appellee without the notice of the weighing of the cotton.

It is satisfactorily proven that the appellants had, at any time prior to the destruction of the cotton, a sufficient number of bales at the press, with which they could have easily, and in a very short time, complied with their obligation. A day or two after the fire, a person connected with the house of Bellocq, Noblom & Co., the appellants, accompanied by P. Nogues, a friend of appellee, called at the press to know the condition of the cotton in general; he exhibited to the yard clerk, Michael Henebery, the receipt for the 18 bales of cotton. Of the marks noted at the foot of said receipt proved to be in the handwriting of P. Roy Noblom, one of the appellants. Henebery then reported nine bales belonging to appellants, which had been restored to the press, four of which corresponded with those marks noted and signed by Henebery. It was then that the appellee, in June following, made a formal demand for his cotton. On that occasion, Mr. Noblom admitted the burning of the cotton, and the restoration of four bales to the press, which he offered to appellee, but declined their responsibility as to the balance.

We contend that there was no delivery made to us, in a manner either sanctioned by law or by usage, of the cotton we contracted and paid for in advance and in good faith, on the 11th of March, 1862 (Arts. 2433 and

2452 C. C.); hence this action is brought to recover the property in kind, or its value at the price proven to be worth at the date of trial of the case, 20th February, 1863.

·The law favors the real rather than the symbolical delivery, particularly in the transfer of movable property, because on general principles the mere possession creates the presumption of ownership in the possessor. In the latter case, in order to do away with this fiction of the law, all the formalities incident to that mode of tradition tolerated by the usages and customs of trade, of the nature spoken of by the witnesses, must be strictly complied with in order to divest the vendor of the possession of the thing, thereby precluding suspicion of ownership and attaching the responsibility of results on the vendee.

These fictitious transactions or modes of delivering cotton, spoken of in the testimony of Mr. E. Puech, p. 30, are also satisfactorily laid down in the case of *Campbell* v. *Penn*, 7 An. 372 and 373. In this case, Bradley, Wilson & Co., the vendors, sold to Simpson through their broker, Keene, 734 bales of cotton, and gave an order on Penn, the keeper of the press, to deliver the cotton to their broker, who entered the same, with its marks, in the black book of the press, without heading, that is to say, without inserting the names of vendors and vendee, purposely to avoid a delivery of the cotton to Simpson, and preventing him from receiving advances thereon until he paid for the cotton. Simpson, however, did receive advances from the firm of Campbell, Rickarby & Co., to the amount of $24,000, and while these advances were being made, Keene, the broker, by order of Simpson, transferred the cotton, by heading the entry in the black book thus: "From Bradley, Wilson & Co., to Campbell, Rickarby & Co." and signed it. Under these facts the plaintiffs succeeded in the suit, not upon the question of the validity of the first entry, for that was without heading and incomplete to pass delivery, but upon the completion and validity of the second entry, which was in due form, definite and certain as to names of vendor and vendee, all of which was done by the instrumentality of Keene, the broker of Bradley, Wilson & Co., who already had the *indicia* of ownership vested in him by virtue of the order of delivery to him from the latter.

Hoffman, the appellants' witness, testifies that he was the superintendent of the Mississippi Cotton Press, and that in the present case he was directed by the appellant "to weigh to order" 18 bales of cotton. This direction or order, if in writing, has not been produced; he also states that he knew not at the time of weighing who the purchaser was. We say that Hoffman, under this direction from his principals, had no power to deliver the cotton to any particular person, but to remain subject to their order. This, too, is to be inferred from the manner in which the so-called "entry of transfer" is executed in the black book. First, it is not signed by Hoffman, who made the entry. Underneath this entry is noted in lead pencil the words "to be sold by B. N. & Co., for account of buyer." This portion was unauthorized and illegal, and stands as unwritten, and forms no part of said entry.

The names ef the vendors and vendee not appearing properly written at the top or heading of this entry, in the manner usually done in tran-

sactions of this kind, as proven by the two witnesses, *Messrs. Henebery* and *Puech*, and as laid down in the adjudicated case of *Campbell* v. *Penn*, is fatal to create or operate any delivery at all, nor even a constructive or symbolical delivery according to usages, much less in law, to the latter of the cotton in question. For the only legal interpretation to be given to the words "to order," and "on account of buyer," is, that the appellants had it so done purposely to suspend the delivery, and in the meantime to retain in them the control of the cotton, subject to their order. Under the condition of such an entry, had the appellants been offered a higher price for the cotton, at any time before the burning, they would have been at perfect liberty to accept it, and insert the name of any other person as vendee in the black book in place of appellee; and in that case the latter would have been without recourse as to these identical 18 bales, even admitting that they were intended for him, because there was no delivery in him.

Therefore if such an entry is thus susceptible to two constructions, to operate constructively a delivery in both instances, and this at the discretion and pleasure of the appellants, who thus assumed control of the cotton, it is just, then, that they should be made responsible for all the results of their negligence in causing the suspension of its delivery, whose duty it was to have made clear and definite their intention on this important subject, the very essence of the contract.

Nor is there any proof showing that the appellee had been notified, according to usage, by way of an invoice, or note of weights, etc., nor that he knew of the weighing of any cotton at the press for him. Even admitting that all the entries in the books are regular and proper, still, under the unusual circumstances of this case: 1. The payment in advance; 2. No broker employed to perfect this negotiation; 3. The appellants having in the contract designated the place of delivery; all of which rendered it more incumbent upon them, if desirous to act their part in good faith, to have notified the appellee of the classing and weighing of the cotton, if intended for him. Had they done that, the transaction would have been regular and binding on the latter, but not otherwise. See Art. 1904 C. C. and notes.

It is clear, from the fact that the appellants having receive the full consideration price for 18 bales of cotton, in advance; that they no longer felt an interest in that much of the staple on hand, and naturally grew dull and indifferent as to the delivery. But having undertaken upon themselves to retain the same at the press, in a suspensive condition for nearly six weeks, was the work of their choice and risk.

In conclusion, the appellee respectfully prays this honorable court, in considering his answer to this appeal, that the judgment of the court of first instance be so amended as to allow him sixty instead of twenty-one cents, as the equivalent value per pound for said cotton, as prayed for in his petition, and proven on the day of trial of the cause to be worth more than that rate; and that the judgment so amended be affirmed, in all other respects, with costs of both courts.

*Fellows & Mills for appellant.*—The case in brief is this : On the 11th March, 1862, plaintiff purchased from Bellocq, Noblom & Co., eighteen

bales of cotton, of middling quality, then lying in the Mississippi Cotton Press, in store, for which he paid an advance of $800. This cotton was weighed by the weigher, Mr. A. Hoffman, at the order of defendants, and an entry made of the weights, and a transfer entered in the "black book:" a book kept by the press for the purpose of entering therein all transfers of cotton from vendor to vendee. On the 25th of April, 1862, one day previous to the arrival of the United States ships of war in front of the city, this cotton was taken out of the press to be burned, by order of the Confederate authorities, together with the greater part of the cotton in the press. Four bales of this lot were saved by the exertion of some one, and returned to the press. Some time after this, about the 11th June, plaintiff made a demand upon Mr. Noblom, one of the defendants, for the eighteen bales of cotton he had purchased some four months previous. To this demand defendant responded, "that he had received from Seris eight hundred dollars on account of the cotton, that it had been weighed, and that there was an overbalance due on the cotton to his firm, but that he could take the four bales."

These are the main facts in the case, and the question at issue is, whether the weighing of cotton and its transfer upon the black book is a delivery? It is submitted that, in the case of *Campbell* v. *Penn* (7 An. 371), this honorable court ruled that the transfer in the black book alone constituted a delivery. The learned judge, in his opinion, says: "Bradley, Wilson & Co. had, or by their agent, placed the whole of the cotton in possession of their vendee, though only symbolically on the black book of the press. It seems so well established by the usages of trade, that we could not resist, however much disposed to favor real rather than fictitious transactions."

How similar is the case at bar ? Bellocq, Noblom & Co. sold to Seris this cotton; it was weighed at their order, transferred on the pages of the black book, and yet Seris pleads it is no delivery. The testimony of the weigher, *Mr. Hoffman*, who has been engaged for many years in this business, and who is thoroughly conversant with the usages of the trade in these transactions, shows plainly that the passage of the cotton through the scales is considered a delivery, as is also the transfer in the black book. He says : "At the time, weighers seldom know the purchaser; so soon as the cotton is passed through the scales it is considered delivered, and is at the risk of the buyer, and never before. I never knew of any variation from that rule. I have been in my present business about sixteen years in this city."

Here we see plainly perceptible a tacit understanding that, after the weighing, the cotton is at the risk of the buyer; and it is not until three months after this that the plaintiff claims the cotton, as though he was ignorant of his ownership, or its almost total destruction. Is it natural or reasonable to suppose that Seris, after paying eight hundred dollars for this cotton, would wait three months for its delivery, he being a poor man ?

It is submitted that, in the case of *Larue* v. *Rugely, Blair & Co.* (10 An. p. 242), the decision of the learned judge plainly shows that even the turning out of cotton to be weighed is a lawful delivery. He says : "Defen-

<div style="float:right"></div>

ants sold to plaintiff a lot of cotton, and gave plaintiff's broker an order on the press for its delivery. A few days afterwards plaintiff paid $3,000 on account of the purchase, and the cotton was destroyed by fire, but before the pressmen had turned out the cotton to be weighed : *Held*, That there was no delivery such as to put the cotton at the risk of the purchaser."

. Is there but one thing deducible from this? and is not that, that if the pressman had turned out the cotton to be weighed, it would have been a delivery? In the case at bar the cotton was turned out, was weighed, and was entered in the black book, thus making three separate deliveries, each of which would be considered as complete, according to the usages of the trade.

The attention of the court is also drawn to the "reasons for judgment," given by the honorable judge of the lower court, on the first trial. He says : "I am of the opinion, from the evidence, that there was a delivery, and that it was so considered by the plaintiff himself up to a period of time subsequent to the burning of said cotton. * * * The receipt given for the sum paid, and specifying the place of delivery, also contains the description of the particular bales of cotton sold, being the same that were weighed. It is shown that, after the burning, the small amount due on the purchase price was paid. This, and the facts that he spoke of the burning as his loss, and of the long delay after the purchase, show the light in which the plaintiff viewed the transaction." * * * *

Can any one fail to discern the manner in which plaintiff carried on this transaction ? Is it not plain that he considered the cotton as his property, and that his delay in removing it was for the reason that he could not find sale for it, and was but awaiting a rise in the market? Learning, some time after the purchase, that his cotton was burned, he (thinking the non-removal would aid him in claiming "no delivery") waited upon and demanded of defendant the eighteen bales of cotton, and meeting with a refusal, brought this suit.

There are, among men of business, certain natural rules, which all more or less obey in their daily intercourse with their fellow man. It is not natural to suppose that Seris, a poor man, investing almost his all in this speculation, would allow three months to pass away without discovering whether the property of the cotton was in him or not. It speaks for itself. He demanded it as his cotton, and he mourned the loss of it as his property.

It may be argued that, according to Art. 2433, C. C., plaintiff had a right to claim a delivery any time subsequent to the sale; but it is evident that the law does not extend this right but to cases in which there has been a non-execution of the contract.

There has been no evasion or withdrawal from the contract by defendants. A lawful delivery was made, and they deemed that sufficient. Attention is respectfully drawn to the testimony of the weigher, yard clerk and others, which is subjoined.

HYMAN, C. J. Defendants are sued to deliver to plaintiff 18 bales of cotton, sold by weight, or to pay damages.

.Judgment was rendered in the lower court condemning defendants to

SERIS
*v.*
BELLOCQ.

deliver to plaintiff 18 bales of cotton, or in default thereof, to pay him' $1,690 50, as damages and cost of suit.

Defendants appealed.

On the 11th March, 1862, plaintiff paid defendants $800 for 18 bales of cotton sold to him, at 10 cents per pound, to be delivered in the Mississippi Cotton Press, in New Orleans. On 24th April, 1862, all cotton in the press was taken out by force and nearly all burned.

· Defendants proved that, on the 17th March, 1862, they ordered and caused to be weighed, in the press, 18 bales of cotton, but for whom witness did not know, and that this cotton was in the press on 24th April, 1862, and that most of it was burned.

Article 2433 of the Civil Code provides, that when goods, produce or other objects are not sold in a lump, but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller, until they be weighed, counted, or measured; but the buyer may require, either the delivery, or damages in case of non-execution of the contract.

The weighing of 18 bales of cotton for an unknown person does not prove that they were weighed for plaintiff, and consequently they did not place them at his risk. Even did it so prove, we would not deem it sufficient to release defendants from the risk and loss, it being an *ex parte* proceeding.

Article 1909 of Civil Code provides that, if the object to be given is uncertain, it is at the risk of the creditor only from the time he is in legal default for not receiving the thing after it has been tendered.

There was no time agreed upon for the weighing of the cotton; and we think that it was necessary to give notice and to put plaintiff in default, as required by this article, before the cotton would be at his risk.

Defendants have invoked the custom of merchants, but they have not proved delivery, as required by custom.

Plaintiff, on appeal, has asked that the damages be increased.

Damages were assessed by the judge of the lower court, at the time that defendants were put in default.

In this he was correct. See 13 La. Rep. 229.

Judgment affirmed, with costs.

HOWELL, J., recused.