Statement of tlj^ Case.
BREAUX, C. J.
Plaintiff sues the defendant to recover the sum of $3,890, with 5 per cent, interest from July 6, 1904, for alleged damages growing out of, as plaintiff alleges, defendant’s neglect to order the shipment of the remainder of the iron deliverable under contracts entered into between plaintiffs and defendant.
There were three of these contracts bearing the same date, viz., 20th November, 1902.
In the first the plaintiff agreed to sell to the defendant 100 tons of No. 3 foundry Woodstock pig iron for the price of $1,900.50. In the second contract 200 tons of Woodstock No. 2 soft pig iron was the property which defendant agreed to buy from plaintiff for the price of $20 per ton. By the third contract defendant agreed to buy No. 1 of the soft- pig iron for the sum of $20.50 per ton.
It is not controverted that plaintiff shipped to defendant a part of the iron for which defendant paid. There were some charges made in the transactions between plaintiff and defendant which do not appear to have given rise to any disagreement.
There were delays in shipment and in executing the- contract, which were granted at the earnest request of defendant for its accommodation.
It avers that it was always ready and willing to deliver the iron sold; that on the 1st day of July, 1904, it notified defendant by letter, which was timely received, that the iron not yet delivered was in its yard, and requested defendant to receive it; and that defendant neglected and refused.
It appears that the market price of No. 3 foundry pig iron declined from $19.50 per ton, price at which it was sold, to $9.50 per ton on the 6th day of July, when plaintiffs allege defendant was put in default, and there was a fall in the value of the other iron sold. In consequence plaintiff claims to have lost the sum first above mentioned, which it asks to recover as damages.
Defendant admits having signed the contracts alleged, copies of which are made part of plaintiff’s petition, and denies all the ■ other averments of plaintiff.
In March, 1903, defendant wrote to plain *429 tiff, requesting a delay, and agreed to notify plaintiff when shipments were to be made, and to receive the iron in question before the end of year.
After acknowledging receipts and acceptance of iron from plaintiff of iron which had been made, defendant wrote, in the letter requesting a delay:
“Beg to say that I am this day handling your notes in settlement of those shipments, and beg to request that shipments on these three contracts be hold up, and I will give you thirty days’ notice when to begin shipping on each, and how much I will need each month; it being understood that I will take all of the iron during the balance of this year. The terms and conditions of the contract to remain in their original form. In reference to payments on further shipments, they will be made cash thirty days from date of shipment. If you can accommodate ns by agreeing to this, please so indorse on this letter.”
This was signed by the defendant firm.
To this plaintiff agreed, and to the extent mentioned there was a modification of the contract.
Defendant ceased forwarding orders. No delivery was made after September, 1903.
In the suspended condition of things plaintiff wrote to defendant, and informed defendant of the number of tons not delivered, and that plaintiff had been advised by Rogers, Brown & Co., who had acted for plaintiff in the premises, quoting from the letter:
“That you had refused to take in this iron, and we now beg to notify you that the iron is in the yard subject to your order, and, if you do not receive same, we will be compelled to seek our remedy through the courts.
“Mr. Stillman, the resident manager of Rogers, Brown & Co., Birmingham, Ala., accompanied me to New Orleans on the 21st of June, and, finding that your manager, Mr. McArdle, was out of the city, we could not see him. We were advised, however, that Mr. McArdle would be in Birmingham in the next few days, and would be advised to call on Mr. Stillman.
“We are notified by a letter of Mr. Stillman’s that Mr. McArdle has not yet put in an appearance, and we thank you to advise us if it is your intention to carry out your contract with this company.”
This letter was received by defendant, but was not answered.
In the November following plaintiff brought suit for the difference in price, and the market value of the iron on the 6th day of July, the day that the letter just mentioned was received by defendant, the total of which amounts to the sum first above mentioned.
Plaintiff’s witnesses testified to the value of the iron at the date of the contract They said that the price mentioned was the current market price. They also) testified as to the value of iron, current market price, on the 6th day of July, 1904, the day that defendants were put in default. The difference between the two was $3,890, amount claimed by plaintiffs.
The president of the defendant company testified that he was still willing to receive it.
Judgment.
Originally there was an agreement between the parties which contained all the essentials to a sale. The property to be delivered was specifically described; the price sufficiently stated. No disagreement arose between plaintiff and defendant while the contract was being executed. The property was shipped as directed by defendant, and the latter promptly enough paid the price to plaintiff for the iron delivered. There came a time when defendant, to sub-serve its own purpose, deemed it proper to call on plaintiffs by letter, and request them, to use their own words, to hold up their shipments; that they wished to have the property delivered from time to time until the first of the following year; and that by the end of the year they would manage to receive it all.
Accompanying this request, plaintiffs were directed not to ship anything prior to their (defendants’) notification.
In an amicable manner defendants wrote to plaintiffs to do nothing on the lines before suggested “before you will have heard from us again.”
*430 Time passed on, and no notification was given. Steps were taken by plaintiffs to find out why it was that the defendants remained silent. Letters were written by the former and received by the latter, to which no answer was given.
The defendants had, by their own request, brought on the delay, and in making the request they held out to plaintiffs that they would be notified when to ship. They assumed the onus of informing plaintiffs when to ship, and although, from that time, the duty of notification was upon them, the plaintiffs, doubtless anxious to deliver the iron they had obliged themselves to deliver, took the initiative of inquiring why it was that they were not notified to ship in accordance with agreement.
At this point we meet with no difficulty in arriving at the conclusion that nonperformance or nonexecution of the contract must be laid at the door of defendants, for it appears from the evidence that plaintiffs were only too willing to deliver the goods and receive the price, and that the delivery was not made because of the hold-up request of defendants to plaintiffs not to ship the iron in question until further notice.
' The next question which arises is whether plaintiffs had sufficiently placed the defendants in mora.
The steps to that end consisted in sending a letter by mail, which was received by defendants in due course of mail, and in a. call on defendants which was made while their agent was away from his place of business,
Wé think there Was notification. Its sufficiency or legality must be determined by accepted precedent and views upon the subject.
There is no sacramental form of notice to be followed in putting one of the contracting parties in default. A letter may accomplish all the pin-poses of a default. The party in delay may be as completely placed in mora as if all the forms of a real tender had been followed.
The purpose of putting in default is to let the party to the contract know that performance is expected, by the person with whom he has contracted. A letter in effect may to that end be as effective and binding as any other notification.
It has been held in France that a telegraphic message may, under some circumstances, be the equivalent of any putting in default in due and regular form. “La mise en demeure pourrait done valottement resulter d’un telegramme.” Huc, p. 172, vol. VII (5) Bruxelles, 10 Fev. 1877; Pass. 77, 2, 257.
The article of the Code provides that the “debtor may be put in default in three different ways: By the terms of the contract, by the act of the creditor, or by the operation of law.” Old Civ. Code, art. 1905.
The foregoing paragraph has been interpreted by this court holding, as in the pending case, where one of the parties to the contract was under obligation to deliver articles to the other, a letter may suffice to put the former in default. Spurrier v. Sheldon, 6 La. 182.
The second paragraph of the article from which we quoted above sets forth substantially:
“If after the time stipulated for the performance, the party demands that it shall be carried into effect, which demand may be made either by the commencement of a suit; by a demand in writing; by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses.” Hunter v. Spurlock, 3 La. 97, 22 Am. Dec. 165; Wilbor v. McGillicuddy, 3 La. 382.
In France one of her courts has carried the rule far enough to hold that a person was put in mora by telegram.
We only refer to the rule, and do not lend it approval or sanction.
Defendants, through their able counsel, say that their omission in npt notifying the plaintiffs before the end of the year to deliver the iron they had sold to them did not release plaintiffs from the necessity of shipping the iron to defendants, and that, in *431 the absence on the part of plaintiffs of all attempt to ship the iron, they are left without right to damages.
It does appear that the following excerpt from the letter copied as part of the statement of the case is an answer:
That “further shipments be held up, and I will give you thirty days’ notice when to begin shipping on each.”
Why should plaintiffs have shipped despite defendants’ direction to the contrary?
Defendants are not in a position to complain successfully.
At their instance, in their interest, the delay was applied for and granted.
In consequence of the request before mentioned the year ^ elapsed. True, plaintiffs waited some six months after the year had elapsed within which the iron was to be delivered, in accordance with the original contract.
The lapsing of these months did not have the effect of annulling the contract, and of also annulling the agreement subsequent, whereby it was modified. The right remained through these months to plaintiffs to deliver the iron, or, on the other hand, to defendants to exact delivery. Had the price greatly increased during these months, defendants might have called upon plaintiffs for performance of their contract, from which they had not been released, or, on the other hand, if it became very much less than the purchase price, plaintiffs could insist upon defendants’ acceptance of the iron they had bought.
During the trial, defendant through its authorized representative, stated, as a witness, that they would accept delivery of the iron and carry out the contract.
If defendants, as we think, were put in mora, it was not possible after that time to insist upon performance under the contract.
The plaintiffs then had a right which they might exercise without the possibility of its falling by reason of the fact that defendants were willing to carry out the terms of'the contract.
That point of law has been clearly announced in Enders v. Gingras et al., 38 La. Ann. 773, in which the court held:
“That after the debtor has been put in mora his offer to execute the contract can be of no avail. It is too late.”
Thus reaffirming Morrison v. Wimberly, 14 La. Ann. 713; Moreau v. Chairvin, 8 Rob. 161.
This brings us to the last question of the case, viz., whether damages should be allowed, and the amount.
Judgment in the district court was rendered for plaintiffs.
The decision in Vance v. Tourne et al., 13 La. 225, is cited with confidence by defendants.
The vendor sought to hold his vendee liable in damages for nonperformance of the contract in which they had entered.
The syllabus shows the theory upon which the case was decided:
“In commutative contracts it is the duty of the party claiming damages for nonperformance to show that he offered to perform his part at the time implied in the dbntraet, and that he has put the adverse party in default.”
The court held that the time of the default had never been fixed with any certainty, and, besides, that the court could not determine that plaintiff suffered any damages which did not result from his own neglect.
In the pending, different from the cited, case, the time was fixed and the amount of damages assessed as laid down in repeated decisions, as laid down even from the just cited decision, as follows:
“The damages at the time of the default or the breach of the contract are the two only damages which can be recovered.”
In Seris v. Bellocq, Noblom & Co., 17 La. Ann. 146, the court held the buyer may require either the delivery or damages in case of the nonexecution of the contract, which is substantially a concurrence with the decision just before cited.
*432 We have not found a different view expressed in the other cited case. Pratt v. Craft, 20 La. Ann. 291.
We have not found any material difference between the views we have expressed and those expressed in Camors & Co. v. Madden, 36 La. Ann. 425, another of defendants’ cited cases.
For reasons assigned, the judgment appealed from is affirmed.