## STATE v. DESOTO WHOLESALE GROCERY CO., Inc. *

### No. 4900.

Court of Appeal of Louisiana.
Second Circuit.
March 8, 1935.

446

Robert J. O'Neal, of Shreveport, for the State.

Craig, Bolin & Magee, of Mansfield, for appellee.

TALIAFERRO, Judge.

Defendant is a wholesale dealer in cigars, cigarettes, and tobacco. Its domicile and place of business is in the town of Logansport on the east side of the Sabine river, the boundary between Louisiana and Texas. Approximately 40 per cent. of its volume of business is with customers residing in Texas.

Plaintiff had an audit made of defendant's tobacco receipts and sales (including cigars and cigarettes) for the period from September 1, 1932, to April 17, 1933, and reached the conclusion therefrom that defendant was due a balance of $803.58 taxes; which is to say that it had failed to put tobacco tax stamps on taxable goods sold by it equal to said alleged balance due. This suit was brought to recover said amount. The gravamen of the petition is that for said period defendant "sold, used or consumed within the State of Louisiana" cigars, cigarettes, and smoking tobacco on which taxes to the amount of $2,951.87 were due, on which sales it had affixed and canceled stamps, evidencing payment of taxes, to the amount of $2,148.29, leaving the balance sued for. The accuracy of these figures is admitted by defendant.

Defendant denies that it is due any part of the amount sued for. It avers that during the period covered by said audit, "it sold and delivered for consumption within the State of Texas tobaccos and cigarettes on which, if sold for consumption in State of Louisiana, there would have been a tax due of $618.02," and that plaintiff is attempting to collect a tax on the goods so sold and delivered for consumption within the state of Texas; that no taxes were due on such sales, and that if Act No. 4 of 1932 attempts to levy a tax on the goods sold and delivered in the state of Texas, then and to that extent said act is unconstitutional, null, and void in that its effect would be to levy a tax on interstate commerce; said unconstitutionality being specially pleaded. It is admitted that the amount of taxes due, if any, on the interstate shipments is $566.94. The balance of the amount sued for, $236.64, defendant contends, would have been the taxes due on goods unstamped, which were stolen from its warehouse during the period covered by the audit.

Plaintiff's suit was dismissed by the lower court, and this appeal is prosecuted by it.

### Motion to Dismiss

■ Judgment was signed in the case on February 8, 1934, and, in absence of counsel of plaintiff, but pursuant to his prior request, order for suspensive and devolutive appeals was entered, returnable to this court on or before March 15th. Bond for each appeal was fixed at $100. Plaintiff being of the opinion that this order of appeal, in so far as it required the giving of bonds, the state being appellant, was unauthorized and illegal, declined to perfect appeal thereunder, and on April 17th petitioned for and secured the setting aside of said order and the granting of a new order of devolutive appeal, without bond, returnable on or before May 30, 1934. Transcript was timely filed. Appellee moved to dismiss the appeal for the reason that the record was not filed in this court within the time fixed by the first order of appeal. Its position is that even though the order requiring the giving of bond was illegal, in other respects it was legal and could not be ignored; that appellant should have perfected its appeal by filing the transcript without furnishing bond, and that the failure to do so operated as an abandonment of the appeal. This position is not tenable. Under Act No. 65 of 1884, the state, being the sovereign, is dispensed from giving any sort of bond in any case. This exemption was extended by Act No. 173 of 1902 to many subordinate po-

litical subdivisions of the state and to boards and commissions created by the Legislature; and in Police Jury of LaSalle Parish v. Police Jury of Catahoula Parish, 145 La. 1053, 1055, 83 So. 250, the court considered the identical question raised in the present motion to dismiss. The syllabus of the case, which tersely covers the court's ruling on the point, reads as follows: "An administrative body, exempt by law from the furnishing of bonds in judicial proceedings, does not, by failing or declining to comply with an order of appeal that attempts to require an appeal bond, waive the right to an order of appeal without bond."

The motion to dismiss is overruled.

### The Merits

Pretermitting consideration of a few controverted minor issues in the case, which are of no real importance and involve negligible amounts in dollars and cents, we pass to the two major questions to be decided:

(1) Were the shipments and deliveries of cigars, cigarettes, and smoking tobaccos by defendant, from its warehouse in Logansport, to its customers in Texas subject to taxation under the terms of Act No. 4 of 1932? and (2) Has defendant satisfactorily overcome the prima facie case of liability made out against it for the remaining $236.64?

We shall discuss and pass on these two issues in inverse order. The first is purely a question of law; the second is a mixed question of law and fact.

It is shown that defendant, in an effort to comply with the requirements of section 6 of said act, segregated the stock of cigars, cigarettes, and tobaccos (which will be hereinafter called "tobacco stock") intended for sale and delivery to customers in Louisiana, from the tobacco stock intended for sale and delivery to its customers across the Sabine river in the state of Texas. The two stocks were kept in separate rooms. The Louisiana stock was duly stamped as required by the act; the Texas stock was not stamped. This stock consisted, as a rule, of larger packages than the Louisiana stock, because it was necessary to open the latter and affix stamps. During the taxable period involved, defendant's warehouse was burglarized three or more times. Tobacco stock was stolen each time, mostly from the untaxed or Texas stock. Defendant's officers were unable to definitely fix the quantity and kind of each stock stolen in these burglaries, but are confident that the untaxed goods taken, if they had been stamped, were sufficient in kind and value

to have required stamps to the amount of $236.64. This explanation of the apparent shortage in affixation of stamps on tobacco stock received by it, after deducting interstate sales and drop shipments, is supported by the testimony of its president, secretary-treasurer, and shipping clerk, all of whom are reputable citizens of their community. They all testify positively that no taxable goods were sold by their company to Louisiana customers without the affixing and canceling of adequate stamps thereon. We think, and hold, that this showing is sufficient to overcome plaintiff's prima facie case on this issue, and that the lower court's ruling thereon is supported by the testimony.

As to the first proposition, plaintiff contends that defendant is due to pay the taxes sued for for two reasons, viz.: (1) That the sales covering the so-called interstate shipments were consummated at defendant's place of business, and, therefore, were Louisiana sales, and the goods thereby sold were subject to be taxed under the act; and (2) that as a condition precedent to being relieved from taxes on goods sold to customers in the state of Texas, the bond required by the act must be given, which was not done.

Section 2 of the act imposes a tax upon "all sales of cigars, cigarettes and smoking tobacco within the State of Louisiana."

Defendant had traveling salesmen who would take orders for goods in Texas and transmit same to it by letter, telephone, or otherwise; and often customers themselves would order goods by letter or otherwise. Defendant operated its own delivery trucks, and by same would deliver to its customer's place of business the goods ordered, after selecting same from its bulk stock set aside for the purpose. It does not appear that any extra charge was made for transporting the goods to place of destination. It was its obligation, and the customers so understood, to deliver these goods to the customer's place of business. The price of the goods was collected on delivery or charged to account thereafter. In view of these facts, we do not think the sales were "within the State of Louisiana." Filling an order and placing the goods on defendant's truck did not transfer the title to the goods to the customer. Other acts had to be done by defendant to complete the sale. It was obligated as a concomitant of the transaction to make actual delivery of the goods to the customer's place of business in Texas. Until a tender of the goods by delivery was made, they were in defendant's possession and at its risk. Had the goods been

destroyed in transit, it would not be seriously contended that the customer could be held for the price.

"If the object to be given is uncertain, it is at the risk of the creditor [purchaser] only from the time he is in legal default for not receiving the thing after it has been tendered." Barthelemy Seris v. Bellocq, Noblom & Co., 17 La. Ann. 146, 152, citing Civ. Code, art. 1915.

The rule that the seller's obligation ceases on delivery of ordered goods to the carrier, consigned to the purchaser, is not applicable to the present case. The facts of this case place it in an exception to the rule because of defendant's dual capacity. In passing, however, we will add that our appreciation of the constitutional principles involved in this controversy is such that it is immaterial to a correct determination of the issue whether sales of these goods were actually consummated in Louisiana or in Texas.

Section 6 of the act, in part, reads as follows: "Every wholesale dealer in this State shall immediately after receipt of any unstamped cigars, cigarettes or smoking tobacco, unless sooner offered for sale, cause the same to have the requisite denominations and amount of stamp or stamps to represent the tax affixed as stated herein, and to cause same to be cancelled by writing or stamping across the face of each stamp the permit number of such wholesale dealer. Provided, however, that any wholesale dealer engaged in interstate business who shall furnish surety bond in an amount and of tenor and solvency satisfactory to the Supervisor shall be permitted to set aside such a part of this stock as may be necessary for the conduct of such interstate business without affixing the stamps required by this Act. Said interstate stock shall be kept in an entirely separate part of the building, separate and apart from stamped stock. * * *"

While this law does not in express terms so declare, yet by inference and from a fair and reasonable interpretation thereof it provides that as a condition precedent to the escapage of tobacco stock destined for sale and delivery to Texas customers—interstate shipments—from taxation, the wholesale dealer must do two things, viz.: (1) Furnish security bond in an amount and of tenor and solvency satisfactory to the supervisor of public accounts; and (2) set aside and keep in a separate room such part of his stock as may be necessary for the conduct of his interstate business. The doctrine, well known, and upheld by scores of decisions, that an excise tax, such as is created by the 1932 act, may not, by a state, be levied on and collected from sales of commodities embraced in interstate shipments, is inferentially, at least, recognized by this act; but the act imposes certain burdens upon the vendor of the interstate shipments as a condition precedent to being relieved of the tax. Defendant was unable to provide bond as required by the act, though in good faith it assiduously endeavored to do so. The other condition, that of segregating the stock, was complied with.

In its nature, the amount plaintiff seeks to recover is a penalty for the failure to provide the bond required by the act. It is conceded that if the bond had been furnished, the tax would not have been due. The measure of such penalty is the amount of tax that would have been due on the goods if sold in the state of Louisiana. The act does not provide for imposition of any penalty for making interstate shipments before providing the bond. It does provide for imposition of a penalty for failing to properly affix and cancel stamps on taxable goods. If plaintiff should prevail in its effort to penalize defendant's lack of ability to timely provide bond, the effect of its success will be tantamount to accomplishing indirectly that which the act itself virtually recognizes cannot be done directly. From the time the goods were separated from those intended for sale to Louisiana customers, they became objects of interstate commerce, and having been carried over the state line into Texas and delivered there, were not subject to excise tax imposed by the state. In the final analysis, to hold that these interstate shipments were taxable under the act, would be, in effect, authority to impose burdens on interstate commerce, a step toward regulation of such commerce, a right which is controlled, under the United States Constitution (article 1, § 8, cl. 3) exclusively by the federal government. Crew Levick Co. v. Pennsylvania, 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295. The syllabus of this case is as follows:

"A state tax imposed upon the business of selling goods in foreign commerce, the amount of which is measured by the gross receipts, is unconstitutional as a regulation of foreign commerce and also as an impost upon exports, levied without the consent of Congress.

"A state tax which imposes a burden upon foreign commerce is not the less unconstitutional because it applies to internal commerce as well."

The tax attacked in that case and the facts considered are quite similar, if not identical,

to those in the present case. The state imposed a uniform license tax on the annual gross volume of business by plaintiff in error. The larger part of its business was with foreign customers, who gave orders for goods to its representatives. The court held that the law imposing the tax was inoperative as to export business, and the fact that it operated uniformly on business done in the state as well as that done without did not save it from the objection of unconstitutionality. We quote the following excerpts from the body of the opinion:

"The bare question, then, is whether a state tax imposed upon the business of selling goods in foreign commerce, in so far as it is measured by the gross receipts from merchandise shipped to foreign countries, is in effect a regulation of foreign commerce or an impost upon exports, within the meaning of the pertinent clauses of the federal Constitution. Although dual in form, the question may be treated as a single one, since it is obvious that, for the purposes of this case, an impost upon exports and a regulation of foreign commerce may be regarded as interchangeable terms. And there is no suggestion that the tax is limited to the necessities of inspection, or that the consent of Congress has been given.

"We are constrained to hold that the answer must be in the affirmative. No question is made as to the validity of the small fixed tax of $3 imposed upon wholesale venders doing business within the state in both internal and foreign commerce; but the additional imposition of a percentage upon each dollar of the gross transactions in foreign commerce seems to us to be, by its necessary effect, a tax upon such commerce, and therefore a regulation of it, and, for the same reason, to be in effect an impost or duty upon exports. This view is so clearly supported by numerous previous decisions of this court that it is necessary to do little more than refer to a few of the most pertinent. * * *

"The tax now under consideration, so far as it is challenged, fully responds to these tests. It bears no semblance of a property tax, or a franchise tax in the proper sense; nor is it an occupation tax, except as it is imposed upon the very carrying on of the business of exporting merchandise. It operates to lay a direct burden upon every transaction in commerce by withholding, for the use of the state, a part of every dollar received in such transactions. That it applies to internal as well as to foreign commerce cannot save

it; for, as was said in State Freight Tax Case, 15 Wall. 232, 277, 21 L. Ed. 146, 162: 'The state may tax its internal commerce, but if an act to tax interstate or foreign commerce is unconstitutional, it is not cured by including in its provisions subjects within the domain of the state.' That portion of the tax which is measured by the receipts from foreign commerce necessarily varies in proportion to the volume of that commerce, and hence is a direct burden upon it."

Many cases supporting the decision are cited, and those relied on by defendant in error are cited and discussed.

Therefore, we hold that Act No. 4 of 1932 does not, as a primary proposition, purport to levy an excise tax on interstate shipments of the character involved in this case; and if it was intended thereby to impose such a tax on such shipments, in default of giving the bond required by section 6 thereof, that to that extent it would be violative of the Federal Constitution and inoperative, because the power to regulate commerce among the several states is vested exclusively in Congress, and in that no tax on articles exported from a state may be taxed by it.

For the reasons herein assigned, the judgment appealed from is affirmed.

---

+Rehearing denied April 3, 1935.