165 So. 2

## STATE v. DE SOTO WHOLESALE GRO-CERY CO., Inc.

### No. 33417.

Dec. 2, 1935.

Gaston L. Porterie, Atty. Gen., and F. A. Blanche and E. L. Richardson, both of Baton Rouge, J. C. Daspit, of Baton Rouge, and R. J. O'Neal, of Shreveport, for applicant, Supervisor of Public Accounts, State of La.

Craig, Bolin & Magee, of Mansfield, for respondent.

O'NIELL, Chief Justice.

This suit was brought by the supervisor of public accounts, in the name of the state, to collect $803.58 taxes on sales of tobacco, cigars, and cigarettes, and to collect a penalty of $100, under the provisions of Act No. 4 of 1932. The district court rejected the plaintiff's demand, and, on appeal to the Court of Appeal, the judgment was affirmed. 159 So. 445.

The plaintiff averred that, during the period from July 1, 1932, to April 17, 1933, the defendant sold tobacco, cigars,

and cigarettes, in an amount which required the payment of $2,951.87 taxes, and that the amount of taxes paid and stamps affixed was in fact only $2,148.29; hence the state claimed the difference, or balance, $803.58, plus the penalty.

■ The defendant denied making any sales of tobacco, cigars, or cigarettes in Louisiana without paying the taxes, and averred that the taxes were paid and the stamps affixed, as required by the statute, on all tobacco, cigars, and cigarettes sold in Louisiana by the defendant during the period stated, but averred that, during that period, tobacco, cigars, and cigarettes were sold and delivered in Texas, on which sales taxes amounting to $618.02 would have been due under the statute if the sales had been made in Louisiana. The attorneys for the supervisor objected to the introduction of evidence to support the defendant's allegation on that subject, on the ground that the allegation was insufficient, in that it did not mean, necessarily, that the tobacco, cigars, and cigarettes on which the taxes amounting to $618.02 would have been due if the goods had been sold in Louisiana were in fact sold and delivered in Texas. The allegation was that the tobacco, cigars, and cigarettes were "sold and delivered for consumption within the state of Texas," which, of course, could be construed to mean that the goods were sold for consumption in Texas, but not that the sale or delivery of the goods was made in Texas. The district judge and the judges of the Court of Appeal construed the allegation as meaning that the goods were sold and delivered in Texas for con-

sumption in Texas; and hence that the evidence to prove the allegation was admissible. We agree with the district court and the Court of Appeal that if there was any ambiguity in the allegation, it was made plain by the further allegation that all taxes were paid and stamps affixed on all tobacco, cigars, and cigarettes sold or delivered in Louisiana during the period stated. Hence we affirm the ruling that the evidence tendered was admissible to prove that the tobacco, cigars, and cigarettes alleged to have been sold and delivered for consumption in Texas were in fact sold and delivered there.

It appears from an auditor's statement annexed to the plaintiff's petition that the state's claim of $803.58 is in two classifications, one classification, amounting to $566.94, being for taxes on sales which the defendant claimed were made in Texas and were therefore interstate commerce, and not subject to the tax; and the other classification, amounting to $236.64, being a shortage which the defendant was required to account for. During the trial this shortage was reduced to $185.56, by the finding of additional invoices for sales made in Texas, on which sales the taxes would have amounted to $51.08 if the sales had been made in Louisiana. There is, of course, a corresponding increase, from $566.94 to $618.02, in the amount of taxes claimed by the state on sales which the defendant alleges were made in Texas.

■ As to the shortage, or quantity of tobacco, cigars, and cigarettes which the defendant had to account for, on the sale of which the taxes would have amounted

to $185.56, or $236.64 as originally contended for, the defendant proved on the trial of the case that the room in which the unstamped interstate stock was kept was burglarized on more than one occasion and that many cartons or cases of cigarettes (and perhaps cigars) were stolen, the number and value of which would account for the shortage of stamps affixed, or taxes paid. Whether that is true is, of course, only a question of fact; which the district court and the Court of Appeal decided in the affirmative. In affirming the finding of the district judge on this question, the Court of Appeal, in its opinion (159 So. 445, 447), says that this explanation of the apparent shortage in the affixing of tax stamps was supported by the testimony of the president and the secretary-treasurer of the defendant corporation and by the testimony of the shipping clerk; and that all of these witnesses were reputable citizens of the community. The attorney representing the plaintiff in the trial objected to the introduction of the testimony, on the ground that it was not alleged in the defendant's answer that the missing goods were stolen. The district judge ruled that, that being a matter of evidence, it was not necessary for the defendant to allege in its answer that a part of the tobacco stock was stolen; and the Court of Appeal affirmed the ruling, inferentially at least, and held that the evidence was sufficient to prove the theft of the goods. In the plaintiff's assignment of errors, in the application for a rehearing, seven alleged errors were enumerated; but no complaint was made, in the petition for a rehearing or in the assignment of errors,

of the ruling on the admissibility of the evidence which proved the theft of a part of the stock of cigars and cigarettes. And, in the petition to this court for a review of the case, the errors alleged to have been made by the Court of Appeal were only those which were complained of in the assignment of errors, in the petition to that court for a rehearing. It appears, therefore, that the objection to the admission of evidence to prove the theft of a part of the stock of cigars and cigarettes was disposed of by the decision rendered by the Court of Appeal. We affirm the decision of the district court and of the Court of Appeal on the sufficiency of the evidence on that subject.

■ Referring now to the sales which the defendant contends were made in interstate commerce, the essential facts of the case are not disputed, and are very simple. The defendant, corporation, is a wholesale dealer in tobacco, cigars, and cigarettes. The domicile and place of business of the corporation is in Logansport, La., on the Sabine river, which is the boundary between Louisiana and Texas. Two-fifths of the defendant's sales were made to customers in Texas. There is a bridge spanning the river near the defendant's place of business. A delivery truck, owned and operated by the defendant, made regular trips into Texas, receiving orders and delivering the goods. No charge was made by the defendant for transportation or delivery of the goods. Some of the orders from the customers in Texas were sent by mail to the defendant, and some orders were given to the driver of the truck. No

sale was actually made or deemed complete until the goods were delivered to the customer, in Texas. The district court and the Court of Appeal, therefore, held that the doctrine, that delivery of a shipment of goods to a common carrier is delivery to the consignee, had no application to this case. Hence both courts held that the sales in question were made in Texas, or in interstate commerce, and therefore were not subject to the state tax. We affirm the ruling that all of these sales, of goods which were actually delivered in Texas by the defendant, in response to orders received in Louisiana from customers in Texas, were not subject to the excise tax under Act No. 4 of 1932. The statute, by its terms, in section 6 avoids any attempt to levy the tax on sales made in interstate commerce. That is conceded in the brief of the appellant. The complaint of the appellant in that respect is of an expression in the opinion of the Court of Appeal, to the effect that, with regard to the stock of goods which was kept in the so-called "interstate stock room," it was immaterial "whether sales of these goods were actually consummated in Louisiana or in Texas." If that expression stood alone, it might well be subject to objection. But our interpretation of all that was said by the Court of Appeal, on the subject of the goods which the defendant kept in the "interstate stock room," was that the sales of these goods were exempt from the tax because the sales were in fact made in Texas. In the official report of the case, 159 So. 445, 448, the ruling on this subject is explained thus:

"From the time the goods were separated from those intended for sale to Louisiana customers, they became objects of interstate commerce, and having been carried over the state line into Texas and delivered there, were not subject to [the] excise tax imposed by the state."

Whether it was correct to say that from the time the stock which was intended for sale in Texas was separated from the stock which was intended for sale in Louisiana, the Texas stock became an object of interstate commerce is a matter of no importance in view of the finding that the sales of the Texas stock were actually made in Texas.

▆▆▆ It was conceded by the defendant, on the trial of the case, that, in several instances, cartons or cases of cigarettes, which were only a small part of the goods which were sold to customers in Texas, were in fact delivered at the defendant's place of business in Logansport, La. It appears that some of the defendant's customers on the Texas side of the river had their retail stores near the bridge; and, in several instances when one of these retail dealers needed cigarettes immediately for his trade, he sent a messenger for them; and the salesman, knowing that the cigarettes were to be taken immediately into Texas, delivered them at the defendant's place of business, instead of taking or sending them beyond the middle of the river and delivering them there. It appears that in every such instance the cigarettes were carried by the buyer immediately into Texas for resale for consump-

tion there. The defendant's estimate of the total amount of sales made in that way was from $25 to $50. Approximating the amount midway, say at $37.50, the total amount of taxes would have been about $15, at the rate of one-fifth of a cent per cigarette, according to what is common knowledge of the number—or about the number—of cigarettes that would cost $37.-50 at wholesale. We mention this merely to show that the amount of taxes which should have been paid on the cigarettes sold in that way was very small. The figures in the record are not sufficient to fix exactly the amount which should have been paid. The district court and the Court of Appeal ignored this violation of the law, not only because the amount of taxes which the state lost thereby was very small, but because the violation of the statute was deemed to be only a technical violation, and was due to the ignorance of the salesman, of the requirements of a statute which had only recently gone into effect. It is more likely, however, that these violations of the law were due to carelessness or laziness on the part of the salesman, who neglected to send or carry and deliver the cigarettes beyond the middle of the bridge. Even so, we believe that it would establish a bad precedent if we should condone or overlook these violations of the statute. It is likely that most of the violations of the tobacco tax law are only small violations; but, if they are to be tolerated because of their smallness, the aggregate of them may do great injustice to the dealers who obey the law, to say nothing of depriving the state of some of the revenue on which she bases her appropria-tions. The fact that these violations of the statute were only technical, and not willful, will be considered a sufficient reason for imposing no penalty in addition to the payment of the taxes and the costs of this suit. But, to the extent of the small amount of these sales which were made in Louisiana, we are constrained to set aside the judgment complained of, and to remand the case to the district court to fix the amount of the taxes as accurately as it can be fixed, and to render a judgment therefor, with costs of court, but without any additional penalty.

The judgment complained of is set aside, at the cost of the appellee, and the case is ordered remanded to the district court for further proceedings consistent with this opinion.