LOUIS J. BRIGHT

     VS                              No. 8095.

PRODUCE & WARRANT CO., INC.

**8095**

October 17th, 1921.

Court of Appeal,
PARISH OF ORLEANS
FILED OCT 17/21

LOUIS J. BRIGHT

VS                    No. 8095

PRODUCE & WARRANT CO., INC.

CHARLES F. CLAIBORNE, JUDGE.

This is a damage suit brought by a purchaser against his vendor for failure to deliver the thing sold.

The plaintiff entered into the following contract with the defendant:

" New Orleans, May 21st, 1919

Sold for account of:

Produce & Warrant Co., Inc.,

New York

To Mr. Louis J. Bright,

New Orleans, La.

About two hundred Fifty (250) bags of Santos Coffee grading 4 - 5's at twenty-three and one-half cents (23½c) per pound. Shipment of A. Ferreira & Co., Santos, advised per S/S "Sumatra Marn" to New Orleans - Described as - Good Bean - Good Roasters - soft - Terms: Ex ship - cash less 2% in 10 days from average - date of weight certificate - sound and made sound - Brazil Gradings - No Arrival - No Sale - Any import duty, internal revenue or any other tax imposed by the United States Government on this coffee is for account of buyer.

Signed: Produce & Warrant Co., Inc..
New York Agency

Signed: J. Maes, Agent

Accepted: Louis J. Bright

Brokers: Produce & Warrant Co.
M. Galliand, Jr.

Payable in New York funds - only - "

49

The defendant afterwards addressed to the plaintiff the following letter:

"Produce & Warrant Co
New York Agency
78-80 Wall Street
Coffee Department

New York, July 22nd, 1919

Mr. Louis.J. Bright,

New Orleans, La.

Gentlemen: We understand from a cablegram received that Messrs A. Ferreira & Co., Santos, have shipped or intend to ship as follows for your account:

Vessel S/S Raifuku Marn - Quantity 250 Bags - Grade 4 - 5's - Price 23½¢ - Purchase date May 21st.

Yours truly,

Produce & Warrant Co., Inc.,
New York Agency

Signed F. Glanesmay

Subject to Correction".

Later on, the defendant sent the following notice to the plaintiff:

"Produce & Warrant Co., Inc.,
New York Agency
73-80 Wall Street
Arrival Notice

New York, July 31st, 1919

Messrs.Louis J. Bright

New Orleans, La.

Dear Sirs: Please note arrival per S.S. Reifuku Marr 250 Bags of coffee against your contract of May 21. As soon as we receive further particulars we will notify you.

Yours very truly,

Produce & Warrant Co., Inc.
New York Agency
Coffee Dept."

The defendant then sent the following invoice to the plaintiff:

"Produce & Warrant Co., Inc.
New York Agency
78-80 Wall Street
Coffee Department
New York City, August 4th, 1919

Proforma

To Mr. Louis J. Bright
New Orleans, La.

Terms: Contract May 21st, 1919. Cash less 2% in 10 days from average date of weight return - Payable in New York Exchange only - 250 Bags of Santos Coffee arrived at Raifucu Marn, Vent 240 - Weighing net about 32500 lbs. @ 23½¢, $7637.50".

The Raifuku Marn arrived in New Orleans on July 31st, 1919. According to its manifest, it carried 4000 bags of coffee shipped by A. Ferreira & Co. to the defendant, and marked P W C -A- B. The defendant refused to deliver any part of that coffee to the plaintiff. Hence this suit. The question to be decided is, was it the duty of the defendant to have delivered to the plaintiff 250 bags out of that lot of 4000?

The defense is that the defendant had a contract with A. C. Israel of New York to deliver to him 4000 bags of coffee, and that he was under obligation to deliver to him the 4000 bags which arrixed on board the Raifuku Marn -; that said bags belonged to A. C. Israel and that no part of them belonged to the plaintiff.

The contract with A. C. Israel is in the following words:

"New York, May 20th, 1919

Sold for account of Produce & Warrant Co., N. Y.

To A. C. Israel N. Y.

About Four Thousand (4000) bags of coffee. Sound and

51

damaged portion, shipped or to be shipped from Santos to New Orleans, Shipment prompt etc. etc."

We construe the contract sued on to mean that the defendant had sold to the plaintiff 250 bags of coffee already shipped or to be shipped to the defendant by A. Ferreira & Co. on board the ship Sumatra Marn, or on any ship substituted in its place. We are confirmed in this construction by the documents emanating from the defendant itself - and which we have copied hereinabove. The first letter from the defendant advises the plaintiff that it

"understands from a cablegram received that Messrs. A. Ferreira & Co., Santos, have shipped or intend to ship as follows for your account (plaintiff's): Vessel S/S Raifuku Marn - quantity 250 bags - grade 4 -5s Price 23½ - purchase date May 21st."

The next letter dated July 31st, 1919 from the defendant advises the plaintiff of the arrival of the

"Raifuku Marn with 250 bags of coffee against his contract of May 21st."

The third document is an invoice of defendant against plaintiff for

"250 bags of Santos Coffee arrived at Raifucu Marn, Vent 240 - & c ".

These letters show conclusively that the defendant understood that the 250 bags of coffee which they had sold to the plaintiff were on board the ship Raifuku and that they were obligated to deliver them to him, and that he was bound to receive them. Hence these notices. The defense that the 4000 bags on board the Raifuku were the property of A.C. Israel, or that the defendant was bound to deliver them to him, does not seem to us to have any merit. The 4000 bags were not the property of Israel, nor could he have claimed them in execution of his contract. If the defendant delivered them to Israel,

52

it was because he chose to do so. It must be observed that the contract was not for the definite number of 4000, but only for "about" 4000 bales, and that a delivery for a less number would have satisfied the contract. Neither did the contract designate the name of the ship upon which the coffee was to be shipped, nor the time within which it was to be shipped. A partial shipment upon the Raifuku, and the balance upon the following ship, would have met the letter of the contract. As to Israel, the condition of the contract:

"No Arrival, No Sale"

would have protected defendants. But plaintiff's contract designated the ship, and a quantity sufficient to fill his contract arrived on board the ship. Defendant was therefore bound to fulfil his contract with plaintiff out of that coffee; he chose to give Israel the preference, he must stand the consequences.

We agree with defendants' counsel that having arrived at the conclusion that the ship and the coffee arrived, there is no necessity for us to interpret the words:

"No Arrival, No Sale".

Plaintiff bought his coffee at 23½ cents per pound; the same coffee was worth on July 31st. 29¼ cents. Plaintiff's loss was therefore 5¾ cents a pound. Plaintiff claims that the 250 bags weighed 33,000 pounds or 132 pounds per bag. Defendants' bill states the "net" weight at 32,500 pounds, or 130 pounds per bag. We prefer to judge the defendant by their own admission. By that weight plaintiff's loss is $1868.75.

When a vendor fails to deliver the thing he has sold, he owes to the purchaser, as damages, the difference between the contract price and the market price of the thing on the day delivery should have been made. C. C. 2486 (2462); 2458 (2433). 6 M. 553; 13 La. 225; 3 A. 45; 140; 6 A. 491, 760; 14 A. 788; 20 A. 291; 29 A. 286; 36 A. 425; 111 La. 387 (394); 115 La.829; 127 La. 350, 357; 146 La. 5, 296; 35 Cyc 633 (c); 124 U.S.64 (73); C. N. 1611; 43 Dalloz Rep. Leg. p 191 § 698; Poithier

53

Vente p. 33 § 72;  1 Trop. Vente  § 301.

The judgment is reduced from one thousand, eight hundred and ninety-seven 50/100 dollars to one thousand, eight hundred and sixty-eight 75/100 dollars, and, as thus amended, it is affirmed, the costs of appeal to be paid by plaintiff and appellee.

Judgment amended and affirmed.
October 17th, 1921.