The city of Newark took possession of the store building, 92 Market street, Newark, November 1st, 1925, under condemnation proceedings to widen Washington street, after an award of $83,650, which was paid into court to await the adjustment of claims thereon of two tenants, Haas and Lesser, parties to the proceedings, who are now pressing for allowance. The lease of each tenant was for a term of seven years, ending May 1st, 1929, leaving an unexpired term of three years and six months. Haas occupied the store at a yearly rental of $8,250, for the first three years and $8,750 yearly for the remainder of the term. Lesser had the second floor at $1,380 per year. The property had a frontage of eighteen feet eight inches, of which fifteen feet two inches was taken up by the store front, the remaining three feet six inches by a stairway leading from the street to the second *Page 102 
story. The depth of the store is sixty-nine feet, and the second floor forty-three feet. The actual rental value of the store is measured by all the witnesses, according to the accepted usage, by foot value of store frontage. Depth and conveniences are incidental, though influential, elements. Haas was paying at the rate of $576 per front foot. The opinions of the real estate experts — two to a side — differ widely. Those of the lessee Haas fixed the value at from $750 to $800 per front foot, while those of the lessor say from $450 to $500. They are equally competent. No distinction can be found in their qualifications. Apparently, they possess an equality of information as to Newark real estate values and rental values, and they appear to balance in honesty of purpose and conviction of opinion. It cannot be said that the judgments of either side predominates. The lack of unity is due to the difference between conservative and optimistic views. It is to be assumed that the sum agreed upon by the contracting parties was the fair rental value of the store as it stood at the time the lease was made, and they themselves provided for the probable increase in value by increasing the rent reserved $500 for the last four years. The fact that the rent reserved is greater than the highest estimate of the lessor's experts does not affect the value of their opinions, but rather tends to prove that the tenant was paying the top notch price. The burden of proof is on the tenants. To recover they must show by the weight of the evidence that the market value of the leases was greater than the rent reserved, and the tenants' witnesses having failed to sustain the burden that the rental value, due to location, is greater than the rent reserved, no allowance can be made on that score.
It appears that Haas expended $18,000 in altering and improving the store front suitable to his shoe business, and it may reasonably be assumed that for the purpose for which it was altered (it was located in the retail shoe center), the rental value was increased presumably to the value of the interest on that sum, which, to that extent, may explain the discrepancy in values between the two sets of expert witnesses, *Page 103 
neither of which seem to have concerned themselves much about the ornamental appearance of the store — location was their all important consideration. Haas will be allowed the value of the interest on the sum spent for the unexpired term, to be calculated according to the rule. The amount expended is disputed by evidence that the work could have been done for much less — about $4,700. The evidence is not considered adequate to overcome Haas' proof of expenditures. Surprise at the difference between actual outlay for alterations to old buildings and estimates on the finished product is a painful but not an uncommon experience.
The value of the Lesser lease was appraised by square foot. He occupied floor space of seven hundred and eighteen feet, and approximately forty-two feet under the stairs, a total of seven hundred and sixty feet, at the rate of $1.82 a foot. The experts' highest figure is $2 per foot — some say $1.50; others $1.50 to $2. It does not appear otherwise than that the tenant was paying the fair market rental, and that he suffered no loss in this respect.
Compensation for injury to business, good-will, cost of removal, c., cannot be allowed. That was decided recently inCity of Newark v. Cook, 4 N.J. Adv. R. 1230; 99 N.J. Eq. 527,
now before the court of errors and appeals for review, where it was held following Vice-Chancellor Emery in Freeholders ofHudson v. Emmerich, that under our constitution and legislation the award is "for said land and real estate or right or interest therein." P.L. 1924 p. 501; amended P.L. 1925p. 233.
It is argued that our legislative method is in conflict with the fourteenth amendment of the federal constitution that no state "shall deprive any person of life, liberty or property without due process of law." If there be merit in the point (it was not made in the Cook Case) it cannot be considered in these proceedings to distribute the fund awarded according to our judicial construction of the statute, viz., for the value of the land or any interest therein. Tenants can participate only to the extent of their interest in the land, and for redress for loss of other property taken without compensation, *Page 104 
such as business, good-will, c., they must find relief in other action, either by injunction if the taking of property be threatened by condemnation without compensation, or by suit in trespass for unlawful taking. Follansbee v. Jersey City,97 N.J. Eq. 489.