AMERICAN SALVAGE CO., APPELLANT, v. HOUSING AUTHORITY OF THE CITY OF NEWARK, RESPONDENT.

IN THE MATTER OF THE APPLICATION OF THE HOUSING AUTHORITY OF THE CITY OF NEWARK TO FIX COMPENSATION TO BE PAID FOR LANDS OF AMERICAN SALVAGE CO., A CORPORATION, &c., TO BE TAKEN FOR PUBLIC USE.

Argued November 30, 1953—Decided January 11, 1954.

Mr. *Irving Siegler* argued the causes for appellant (*Messrs. Siegler & Siegler,* attorneys).

Mr. *Samuel Roessler* argued the causes for respondent (*Mr. Augusline J. Kelly,* attorney).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. In these condemnation proceedings the judge sitting as legislative agent, on motion of the condemnor, issued a writ of assistance authorizing the Sheriff of Essex County to employ a contractor to remove personalty from the lands taken. Subsequently an order entered under *R. S.* 20:1–15 determining the several interests in the condemnation award directed the payment to the condemnor from the award of the expenses of having the per-

sonalty removed, and also the payment of a counsel fee to the condemnor's attorney. The condemnee appeals.

Appellant operated a salvage, junk and surplus property business, advertised as the "home of 1,000,000 items," on an acre and a quarter tract which was taken in condemnation by the Housing Authority of Newark for a low income public housing project.

Under section 20:1–36 of the Eminent Domain Act a housing authority may acquire title to condemned lands simply by filing a declaration of taking and depositing with the court the estimated compensation for the lands. Thereupon the authority also becomes entitled to possession within 20 days after the filing of the declaration unless "upon good cause shown" the judge designates a later time. The declaration of taking here was filed March 18, 1952, and an order was entered March 2 directing appellant to surrender possession by April 8, 1952.

It was a physical impossibility for the owner to surrender possession by April 8. The premises were filled to overflowing with a great and divers mass of goods, some housed in the few buildings and sheds but most of it lying unsheltered in high piles in the yard. There were tons of scrap metal and other heavy materials, thousands of discarded telephone booths, countless cans of paints, glass, rotted lumber, and great quantities of debris. Much if not most of the aggregate tonnage was worthless, as is common in a salvage business of this type.

The Authority protested that appellant was making no effort to comply with the order for possession but was continuing business, and applied to the judge for a writ of possession directed to the Sheriff of Essex County for execution. The appellant countered with a motion for additional time, supported by affidavits showing that many weeks, "approximately sixty days," were required to complete removal. The affidavits asserted that much of the debris was being burned in a pit on the premises under a permit from the Newark Fire Department, that a trailer, power wagon, dump truck and rack truck were in daily use removing ma-

terials, that after the taking on March 18 upwards of 50 tons of salvageable scrap metal were removed by a purchaser thereof in his own trailers, and that every effort consistent with the nature of the business was being made to remove the salvageable items and ready the premises for the turnover of possession. Appellant was also having difficulty obtaining a new location. Indeed, the salvageable goods when finally removed were spread around among five locations in Newark and Harrison. Appellant admitted that it was still trying to keep its business going, but retail sales of course had the effect of removing goods. Appellant also conceded that some additional goods were being received from time to time, but related these to contracts of purchase which preceded the taking, and in any event the company at that time was without adequate facilities for their storage elsewhere.

Despite the apparent merits of appellant's motion for additional time the judge granted the Authority's motion and a writ of assistance dated May 5, 1952 issued directing the Sheriff of Essex County to deliver possession of the land to the Authority by removal of "the personal property belonging to" appellant. The writ directed the sheriff to permit appellant to remove the property, but provided that if appellant did not proceed "diligently" with the work the sheriff was to apply on May 12, one week later, "for permission to enter into a contract or contracts for the removal of all the remaining personal property, of every nature and description * * * at the proper cost and expense of the said American Salvage Co., the Housing Authority of Newark, however, to advance in the first instance, such sums as may be required by you for the purpose of executing this Writ."

On May 12 the sheriff's officer, without prior notice to or knowledge by appellant, reported to the judge that in his opinion appellant was not proceeding with the removal work with due diligence. The sheriff thereupon received the judge's permission to engage a contractor, and after consultation with the Housing Authority employed a contractor

at rates of from $54 to $56 per day per truck and $20 per day per man, with overtime to be computed on the basic rates. The contractor employed as many as ten trucks and trailers and up to 35 men in doing the work.

The contractor's work was begun on May 15 and was completed June 27, some six weeks later, when the land was entirely cleared. From the day the work began the sheriff's officer in charge consulted appellant's wishes as to what was to be abandoned as worthless and taken to dumping grounds and what was to be kept as salvageable and delivered to appellant's new locations. What the contractor moved was largely the abandoned materials, something over 250 of its truck and trailer loads going to dumping grounds. In the same time appellant also employed its own four trucks in the work and hired two others and a crane to assist, and the buyer of the scrap metal removed 22 trailer loads of scrap metal.

The contractor's charges aggregated $27,614.25 and were paid by the Housing Authority. The Authority also paid a charge of $250 for rental of a storage warehouse where some of the salvageable materials were temporarily stored, and a charge of $1,949 made by the County of Essex, representing the proportionate part of the salaries of the sheriff's officers for the time given by them in supervising the work.

A jury awarded appellant compensation of $100,000 for the land at a trial held September 25, 1952, several weeks after the removal work was completed. The money was deposited with the Clerk of the Superior Court under an order entered October 20, 1952, which order also provided that the Housing Authority "be and it is hereby granted, a lien against and upon the said fund  *  *  *  for the moneys which may be found to have been expended by it in the execution of the writ of May 5  *  *  *." Appellant appealed on November 3 from this provision of the order, and also from the writ of May 5.

The Housing Authority thereafter filed a petition in the Chancery Division under *R. S.* 20:1–15 for distribution of the fund, asserting a claim for the total of $29,813.25 ex-

pended by it. After hearing, the Chancery Division on January 23, 1953 entered a judgment which, among other things, allowed the claim in full and also allowed a counsel fee of $1,000 to the attorney of the Housing Authority and directed both to be paid from the deposit. On January 30, 1953 appellant filed a notice of appeal from those provisions of the judgment.

The appeals were consolidated by order of the Appellate Division, and while awaiting argument there were certified here of our own motion.

A previous appeal from the writ of May 5, taken by appellant about June 1, 1952, was dismissed by consent on September 26, 1952. The Housing Authority contends that by reason of this appellant is now barred from arguing the merits of the issuance of the writ. That contention is without substance. Neither the writ nor the later order of October 20 entered by the judge sitting as legislative agent was a final judgment, but interlocutory. Under the statutory scheme the final judgment which establishes the several interests in the condemnation award was that entered in the Chancery Division on January 23, 1953 on the Housing Authority's petition for distribution under *R. S.* 20:1–15, based upon its claim of right to share in the award to the extent of the amount of the removal expenses. The duty of the Chancery Division under *R. S.* 20:1–15 is "to ascertain the amount of the just compensation for each interest," *Bowers v. Town of Bloomfield,* 81 *N. J. Eq.* 163, 166 (*E. & A.* 1913). The determination whether the Housing Authority had an interest and if it did the amount of the just compensation for it, necessarily brought into question the merits of the antecedent interlocutory orders upon which the claim rests.

Appellant's first argument is that there was no power or authority in the judge sitting as legislative agent to issue the writ of assistance and that, the writ being invalid, the provisions appealed from of the subsequent order of October 20, 1952 and the final judgment of January 23, 1953 must also fall. It is insisted that the writ may

not issue except in an appropriate plenary action invoking the exercise of judicial powers, the contention being that provision for such a remedy cannot be found in the Eminent Domain Act and thus that the allowance of the writ on a simple motion in the statutory proceeding was without the jurisdiction of the legislative agent. We find no merit in the argument. True, the amendment made to *R. S.* 20:1–2 by *L*. 1953, *c.* 20, providing that in condemnation proceedings "the court shall have and shall exercise its full jurisdiction" became effective after the writ issued. But we think the issuance of the writ was within the statutory powers vested in the judge as legislative agent. Plainly one of the primary objects of *R. S.* 20:1–36 is to put the Housing Authority as promptly as possible in possession of the land taken. Power and authority in the legislative agent to make all orders necessary to carry into effect that primary object are clearly embraced within the broad powers vested in him by *R. S.* 20:1–31 to "make such further orders and direct such further proceedings * * * as may appear reasonable." See *People ex rel. Armstrong v. N. Y. Central & Hudson R. R. Co.*, 2 *Hun.* 482 (*Sup. Ct.* 1874), affirmed 60 *N. Y.* 116 (*Ct. App.* 1875).

The essential inquiry, then, is whether in the circumstances presented the judge as legislative agent exceeded the bounds of discretion in allowing the writ or, at all events, in authorizing the employment of a contractor as a means of effecting its execution. As has been noted, the public policy of the statute contemplates that possession of the land taken shall be promptly surrendered to the Housing Authority. It is, of course, the duty of the legislative agent, to the extent consistent with the rights of the condemnee, to give full effect to that policy. However, the statutory provision allowing the judge discretion to defer the surrender date "upon good cause shown" obviously also contemplates that just and fair consideration shall be given the legitimate removal problems confronting the condemnee. It must be emphasized that the owner of land taken by eminent domain stands in a far different position from that

of a defendant in an ordinary law suit. The latter has usually "brought the trouble upon himself, if he is liable at all, by breaking a contract or committing a tort." The owner of lands taken in condemnation, on the other hand, is in his predicament only because "he happens to own available land." 1 *Nichols, Eminent Domain, sec.* 4:109.

The owner is ordinarily obliged to pay the expense of the removal of any movable personalty that he does not decide to abandon. This is because it is generally held that damages for injury to such personalty not included in the taking or the expense of moving it are not proper elements of compensation. *Cf. City of Newark v. Cook,* 100 *N. J. Eq.* 581 (*E. & A.* 1927), affirming 99 *N. J. Eq.* 527 (*Ch.* 1926); *City of Newark v. Eisner,* 100 *N. J. Eq.* 101 (*Ch.* 1926); 18 *Am. Jur., Eminent Domain, sec.* 255, p. 894; *Annotations* 34 *A. L. R.* 1523; 156 *A. L. R.* 397. On the other hand, the owner is at liberty to abandon such personalty as he chooses when he surrenders possession, and in such case the condemnor takes the land as it is and must remove the personalty at its own expense.

In our view the issuance of the writ was warranted only as the Authority's affidavits are read as suggesting an urgent need for immediate possession not permitting of an allowance of time to appellant sufficient in normal course to select and remove the salvageable goods. We cannot agree with the Authority's argument that the affidavits show a deliberate and intentional design by appellant inordinately to delay the surrender of possession. It strikes us that appellant's situation reasonably suggested a more searching inquiry than seems to have been made into the Housing Authority's need for immediate possession. However, we resolve the doubt in the Authority's favor and will assume that it was not unreasonable for the judge to conclude on what was before him that the effective accomplishment of the Authority's mission required that the writ issue and a contractor be employed to clear the land. Yet we search in vain for any possible justification for the provision saddling the appellant with the expense of moving not only the

salvageable goods which appellant wanted to keep but also with the expense of moving the worthless materials which appellant was entitled to abandon. Even if there were a showing of censurable conduct on the part of the appellant, the legality of the provision shifting the Authority's burden to appellant would be highly questionable. In practical effect the result is to deny the owner of the condemned land the full and just compensation secured to him by the constitution.

We are not prepared to say that it was unreasonable to require the appellant in the special circumstances shown to submit to the removal of his salvageable goods by a contractor and to secure the payment of the reasonable cost thereof from the award. The effectuation of the public policy to expedite the construction of low-income public housing suffices to support the action in light of the magnitude of the removal task. But, plainly, the Housing Authority must bear the burden of showing what part of the expense represents the removal of salvageable goods and that that expense was reasonable. Appellant appears to have approved in advance the $250 storage rental charge and may not now challenge the reasonableness of that charge. The same is not true, however, of the contractor's trucking and loading rates. Appellant was not consulted as to them.

No part of the $1,949 paid to the County of Essex as reimbursement of the salaries of the sheriff's officers may be fairly charged to appellant. We are not informed by what legal warrant the charge by the county was made, but in any event the services were not rendered for appellant's benefit but to accommodate the Housing Authority's desire for immediate possession.

And in the circumstances of the case, even if the deposit of the award created a fund in court assessable for counsel fees under *Rule* 3 :54–7, now *R. R.* 4 :55–7, we discover no basis whatever to justify an allowance in any amount to the attorney for the Housing Authority.

In view of the result reached, it appears that the deposit will be sufficient to pay in full all claims upon the award.

We shall therefore not decide the question argued whether the Housing Authority's claim was properly given priority by the Chancery Division over the claim for services of appellant's attorneys in obtaining the award.

The writ of May 5, 1952 is modified to limit appellant's obligation to pay the cost of removing personalty to the reasonable expense of removing such personalty as appellant kept and did not abandon. The provisions of the order of October 20, 1952 securing the payment from the award of the amount properly due the Housing Authority is affirmed. The provision of the final judgment of January 23, 1953 allowing a counsel fee of $1,000 to the attorney of the Housing Authority is reversed and set aside. The provision of said final judgment directing the payment of $29,813.25 from the award to the Housing Authority is reversed and the cause is remanded to the Chancery Division for a redetermination of the Authority's claim consistent with this opinion.

*For reversal and remandment*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.