115 N.J. Super. 467 (1971)
280 A.2d 216
HOUSING AUTHORITY OF THE BOROUGH OF CLEMENTON, A BODY POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALEXANDER MYERS AND ANN MYERS, HIS WIFE, ANN'S DRESS SHOP, G. & G. DRESS COMPANY, INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 1971.
Decided August 2, 1971.
*469 Before Judges GOLDMANN, LEONARD and FRITZ.
Mr. Michael D. Varbalow argued the cause for appellants (Mr. Joseph R. Livesey on the brief; Messrs. Jubanyik, Jubanyik & Varbalow, attorneys; Messrs. Kates, Livesey & Edelstein, of the Pennsylvania Bar, of counsel).
Mr. Charles A. Little argued the cause for respondent (Messrs. Bleakly, Stockwell, Zink & McGeary, attorneys).
The opinion of the court was delivered by FRITZ, J.A.D.
In addition to other questions presented in this appeal, we are faced squarely with the question of whether the expenses of moving industrial equipment constitute an item of "just compensation" in condemnation proceedings. Until the decision in State v. Gallant, 42 N.J. 583 (1964), there seemed no doubt of the negative answer to this inquiry. American Salvage Company v. Housing Authority of Newark, 14 N.J. 271 (1954). Gallant and the very recent pronouncements in Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374 (1971) have supplied that doubt, and it is with that posture of things that we are here concerned.
In this action, plaintiff Housing Authority, acting in accordance with proper statutory warrant in connection with a federally funded urban redevelopment project, condemned defendants' property for proper public purpose.
The premises in question were owned by defendants and were operated as a dress factory and retail outlet store. The *470 building which housed defendants' operations was furnished with equipment typical of that necessary to the dress manufacturing operation there conducted and the retail store. This included, among other equipment, 6 sewing machine line systems, 11 sewing machines and tables, 2 cutting tables, 53 special lighting fixtures, 4 dressing booths, 5 garment hang rails ceiling-anchored, 1 garment hang rail floor-anchored, and 5 other garment rails, a work bench, a press table and hand irons which included steam piping and electric wiring and which was floor-anchored, a press which was steam and electric-connected, 2 steam boilers, and shelving and a mirror which were wall-anchored.
At the condemnation hearing before commissioners an award of $50,000 was entered. Defendants appealed, plaintiff cross-appealed, and a jury trial followed. By the time of the trial defendants had removed the equipment to a different location where they had reinstalled it and from whence they had continued the dressmaking and selling operation.
At the trial defendants offered an expert to prove "the value of the property at the time of taking," including the value of the "machinery and equipment and various other pieces of equipment or fixtures, as you might call them," which defendants contended "were an integral part of this building" and, therefore, an element contributing to the value of the premises. The court sustained an objection to the offer.
Defendants then made a "secondary offer" to prove the costs of removal. Objection to this was also sustained.[1]
In his rulings the trial judge distinguished Gallant on the basis that defendants had chosen to remove the equipment *471 from the premises. He relied on language from American Salvage Company where it is said:
The owner is ordinarily obliged to pay the expense of the removal of any movable personalty that he does not decide to abandon. This is because it is generally held that damages for injury to such personalty not included in the taking or the expense of moving it are not proper elements of compensation. Cf. City of Newark v. Cook, 100 N.J. Eq. 581 (E. & A. 1927), affirming 99 N.J. Eq. 527 (Ch. 1926); City of Newark v. Eisner, 100 N.J. Eq. 101 (Ch. 1926); 18 Am. Jur., Eminent Domain, sec. 255, p. 894; Annotations 34 A.L.R. 1523; 156 A.L.R. 397. On the other hand, the owner is at liberty to abandon such personalty as he chooses when he surrenders possession, and in such case the condemnor takes the land as it is and must remove the personalty at its own expense. [14 N.J. at 280]
We turn first to a consideration of whether an owner-condemnee may demonstrate the value of the premises taken by including in proof of such value its enhancement attributable to personal property used by the owner in his operations on the premises. The policy considerations involved in the question, the growth of the law and its present state are all cogently synthesized in State v. Gallant, supra. Despite prior pronouncements, for the most part collated in Gallant, we need look no further back than that relatively recent case.
Plaintiff, realizing as we do that Gallant gently commences a refurbishment of condemnation doctrine by substituting contemporary considerations for anachronistic aphorism, attacks the application of Gallant here in a manner sufficiently interesting to be worthy of comment. Plaintiff first points out, correctly enough, that the Gallant facts and the facts here are different, at least to the extent that in Gallant the machinery was difficult and expensive to remove whereas here the machinery was "easily dismantled and transported to a new location and reassembled." (We pass for the moment the fact  unmentioned by plaintiff in its brief  that defendants' proffered proof showed the cost of this movement to be almost half the value of the freehold as determined by the jury.) From there plaintiff argues that "it *472 can be concluded that before condemnation the machinery was not an integral and valuable part of a going business."
Such an argument not only appears to us to involve a non sequitur of some magnitude, but as an effort to distinguish Gallant that is frustrated by the specific language of the case: "We disagree [with the Appellate Division], however, that the test for compensation of the looms is their removability." (42 N.J. at 586).
If not removability, what then? Gallant provides the answer:
* * * Where, therefore, a building and industrial machinery housed therein constitute a functional unit, and the difference between the value of the building with such articles and without them, is substantial, compensation for the taking should reflect that enhanced value. This, rather than the physical mode of annexation to the freehold is the critical test in eminent domain cases. See Harvey Textile Co. v. Hill, 135 Conn. 686, 67 A.2d 851 (Sup. Ct. Err. 1949); Jackson v. State, supra [213 N.Y. 34, 106 N.E. 758, L.R.A. 1915D, 492 (Ct. of App. 1914)]. [at 590]
The definition of functional unit is provided. The looms in question in Gallant were said to be "an integral and valuable part of a going business housed in defendants' factory" (at 589).
The inevitability of the Gallant holding was heralded in prior cases. Ridgewood v. Sreel Investment Corp., 28 N.J. 121 (1958) recognized function as an element of value. Less directly, but for a long time, natural attributes on the land, such as trees and topsoil, were acknowledged as an element of value capable of enhancing the value of the land, even though their intrinsic value, constituting as it does a part of the realty, could not be separately proved. W.A. Manda, Inc. v. D., L. & W.R. Co., 89 N.J.L. 327, 329 (E. & A. 1916); Tennessee Gas Transmission Co. v. Maze, 45 N.J. Super. 496, 503 (App. Div. 1957). So it was not really a departure from traditional concepts when Gallant held that where personalty which is an integral part of a going business enhances the freehold, the unwilling condemnee *473 should be compensated for the enhancement valuable to him and of which he is being deprived. Cf. State by State Highway Com'r v. Burnett, 24 N.J. 280 (1957).
We have no doubt that defendants here fit within that rule. Accordingly, the question becomes: Does a defendant's removal of the personalty after condemnation  at his expense  deprive him of his right thus to be compensated. We think it should not. Holding as we do, consistent with Gallant, that the condemnee is entitled at the outset to compensation for the value of his land as enhanced by the personalty, we see no logical reason then to penalize him because he chooses to salvage some use from the personalty  at his own expense  and not leave it behind to become the condemnor's economic burden to remove. American Salvage, supra. Viewed from the summit of practicality, personalty left behind is generally of little value to a condemnor and is frequently an expense. It would be illogical to compel a condemnor to assume the expense of disposing of the personalty in a situation where the condemnee was willing to undertake the burden, by a rule which also penalized the condemnee unless he left the personalty behind. We discuss below the occasional situation where the condemnor may want the personalty.
Just compensation for value to the owner of a business, as enhanced by personalty he has there utilized as a functional unit with the building and land, does no more than compensate the owner for his loss. His loss with respect to those premises is no less because he chooses at his own expense to remove the personalty.
Nor is such a concept at odds with the equivalency established in our cases between just compensation and fair market value. City of Trenton v. Lenzner, 16 N.J. 465, 476 (1954). There value is described as follows:
* * * In Kimball Laundry Co. v. United States, 338 U.S. 1, 5, 69 S.Ct. 1434, 93 L.Ed. 1765, 1771 (1949), the court pointed out that "value" has many meanings, that oftentimes the value to the owner differs from the value to the acquirer, but that most things *474 have a general demand which give them a value transferable from one owner to another. Ordinarily this transferable value may be measured by the price which, in all probability, would voluntarily be agreed upon in fair negotiations between an owner willing (but not forced) to sell and a buyer willing (but not forced) to buy; and it is this price which is generally said to determine the fair amount of compensation to be paid to the owner. See East Ridgelawn Cemetery v. Winne, 11 N.J. 459, 469 (1953); Jahr, supra. [Eminent Domain (1953)], 100. While it has been pointed out that these concepts are somewhat indefinite, it may well be that their flexibility is the very thing which will best serve to attain the goal in eminent domain proceedings of "justice and indemnity in each particular case." See Westchester Co. Park Comm. v. United States, 143 F.2d 688, 692 (2d Cir. 1944), certiorari denied, 323 U.S. 726, 65 S.Ct. 59, 89 L.Ed. 583 (1944).
Cf. Jersey City Redevelopment Agency v. Kugler, supra, where value is described as "the full equivalent in money of the property taken." [58 N.J. at 378]
We have no doubt that, in terms of City of Trenton v. Lenzner, the willing buyer purchasing defendants' premises in a free sale would be expected to include in the purchase price the enhancement of the value of the property by reason of the personalty in place. Cf. State v. Gallant, supra, where it is said:
* * * An owner, who is under no duress, and where the building and machinery are a functional unit, would undoubtedly sell only at a price which would reflect that increased value. * * *. [42 N.J. at 590]
To offer less to an unwilling seller forced by law to sell (or at best relocate) a going business appears to be a gross inequity in the nature of that at least implicitly proscribed in Jersey City Redevelopment Agency.
We turn to the alternate and separate problem of reimbursement for moving expenses as an item of damage in eminent domain. The rule in New Jersey has been said to be that the expense of moving personalty is not a proper element of compensation. American Salvage Company, supra, 14 N.J. at 289; State v. Gallant, supra, 42 N.J. at *475 587; Port of N.Y. Authority v. Howell, 59 N.J. Super. 343, 348-349 (Law Div. 1960), aff'd 68 N.J. Super. 559 (App. Div. 1961), certif. den. 36 N.J. 144 (1961); Newark v. Eisner, 100 N.J. Eq. 101, 103 (Ch. 1926). It appears beyond dispute that elsewhere, except where a different rule is imposed by statute, this is the "greatly predominant" view. 27 Am. Jur.2d 102, Eminent Domain, § 293; 29A C.J.S. Eminent Domain § 164, p. 713. The rule has been sharply criticized. See, e.g., Aloi and Goldberg, "A Reexamination of Value, Good Will, and Business Losses in Eminent Domain," 53 Cornell L. Rev. 604 (1968). And there is authority expressly to the contrary on the basis of constitutional mandate of just compensation. Jacksonville Expressway Authority v. Henry G. Du Pree Co., 108 So.2d 289 (Fla. Sup. Ct. 1958), and its annotation at 69 A.L.R.2d 1445.
Without denying that certain elements of loss to a going business have been sufficiently speculative to prevent their consideration as damages in condemnation, such as loss of profits and good will, we are not convinced that the rule procribing an allowance for moving expenses said to be extant in New Jersey as noted above appeared as a binding judicial proclamation prior to American Salvage Company or since.
Newark v. Cook, 99 N.J. Eq. 527 (Ch. 1926), aff'd 100 N.J. Eq. 581 (E. & A. 1927), cert. denied McEuen v. Cook, 274 U.S. 757, 47 S.Ct. 768, 71 L.Ed. 1337 (1927), the bedrock on which subsequent acceptance of "the rule" was constructed, concerned litigation among conflicting claimants arguing as to the apportionment of a condemnation award in a fixed amount previously made. In considering the problems thus involved (and without a suggestion otherwise in the opinion that removal costs as such were involved; an evaluation of good will does appear among the issues), the court posed a "remaining question" as to whether the tenants were "entitled to compensation for the loss of their business, profits, good will, fixtures and cost of removal" and answered *476 it in the negative. Worthy of careful observation in this first homily from which the rule has often been repeated is the vice-chancellor's statement with regard to his holding, "And, while no reported cases in our own courts have been referred to, this rule, as I understand, has always been applied in this state." 99 N.J. Eq. at 537. He believed the matter to be strictly for the Legislature and his decision as absolutely controlled by the then existing statute, a concept not in accord with our present view of the overriding constitutional requirements of "just compensation" (Jersey City Redevelopment Agency v. Kugler, supra) and the privilege and obligation of the courts to decide what constitutes just compensation, about which more appears below. And finally, he acknowledged that such a rule "works hardships."
Neither the opinion in Eisner, another battle between tenants for apportionment of a prior condemnation award, nor that in Howell, contains any suggestion of a factual moving expenses problem, and in each the statement with regard to noncompensability of moving costs is lumped generically with such things as loss of profits and good will. With like effect, New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309 (App. Div. 1956), cited in Gallant, concerned an apportionment action between contesting owner and tenant with respect to a condemnation award, and no suggestion of a particular removal expenses problem appears, the statement with respect to the unavailability of a claim by the tenant for such being again lumped with comment on loss of business, profits and good will. Wayne Co., Inc. v. Newo, Inc., 75 N.J. Super. 100 (App. Div. 1962), also cited in Gallant, is of the same nature; Newark v. Cook is quoted.
We have no quarrel with a rule disallowing alleged damages of a speculative nature, such as loss of business and good will. On the other hand, in the case of moving expenses which are actual and demonstrable, so that any complaint of their speculative and hypothetical nature disappears, *477 the only reasonable argument for their exclusion also disappears.
To the extent that the rule excluding reasonable moving expenses as damages might have been thought to be the law in New Jersey, we believe it no longer viable, and hold to the contrary. Recognizing that the Appellate Division may not declare the law contrary to pronouncements of our Supreme Court and eschewing absolutely an arrogation of the exclusive right of the Supreme Court to alter the law as thus announced, we express our opinion that the result in State v. Gallant in general and the reference to and quotation therein from the Note, 36 Oregon L. Rev. 180, at pp. 180-181 (1957) [42 N.J. at 588] in particular, have implicitly overruled Newark v. Cook and the adoption of its "rule" in American Salvage Co. v. Housing Authority of Newark. While an easier escape for this court might be found in lip service to American Salvage, despite our conviction that the Supreme Court has renounced the principle applied there solely on the basis of the Cook and Eisner cases, as far as New Jersey precedent is concerned, we believe that to adopt such a position would be an abrogation of our function to determine the law as it exists at the present moment and not as it was thought to be in 1954. As aptly put by Justice Hall in Roadway Express, Inc. v. Director, Division of Taxation, 50 N.J. 471 (1967), app. dism. 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968):
* * * Our obligation is therefore that so well expressed by Judge Learned Hand in his dissenting opinion on an earlier phrase of Spector in the Court of Appeals for the Second Circuit:
* * * I conceive that the measure of [a lower court's] duty is to divine, as best it can, what would be the event of an appeal [to the United States Supreme Court] in the case before it. (Spector Motor Service, Inc. v. Walsh, 139 F.2d 809, 823 (1944)). [at 475]
The legislative and constitutional mandates center around the requirement of "just compensation," and both are satisfied with the result here reached. Ascertainment of that which is just compensation is a judicial function. *478 United States v. New River Collieries Co., 262 U.S. 341, 343-344, 43 S.Ct. 565, 67 L.Ed. 1014 (1923). A "margin of discretion" exists for both courts and the Legislature in order that they may assure the provision of just compensation, and each may in this effort prescribe a rule of damages more favorable to the landowner than that which would satisfy the minimum requirement of the Constitution. Jersey City Redevelopment Agency v. Kugler, supra, 58 N.J. at 384. As noted above, just compensation has been equated with fair market value, and value as used in that context has been variously described and said to have "many meanings." City of Trenton v. Lenzner, supra, 16 N.J. at 476. Indeed, in Lenzner (which succeeded American Salvage by 11 months) an inescapable portent of the direction of the law in this regard appeared when that court, speaking through Justice Jacobs, said:
* * * More significant is the increasing tendency displayed in recent cases of giving fair and weighty consideration to the consequential loss of business as an element of the compensation rightly due to the owner. See Kimball Laundry Co. v. United States, supra; Housing Authority of City of Bridgeport v. Lustig, [139 Conn. 73, 90 A.2d 169,] supra; 18 U. of Chi. L. Rev. 349 (1951); 35 Va. L. Rev. 1059 (1949). [16 N.J. at 477]
Ten years later that farseeing prediction achieved reality when Gallant injected indemnification into the formula for just compensation thusly:
There is no logical reason, however, why a condemnee, although compensated for the market value of his land and buildings, should suffer all other loss incidental to the taking thereof for the public benefit. * * *. [42 N.J. at 588]
It is not without significance that this statement followed immediately after three paragraphs dealing specifically with reimbursement for moving expenses.
It is in order to accommodate such an awakening to contemporary realities and such an adjustment to our changing *479 times  which have seen an increasingly broad utilization of the power of eminent domain by a vastly greater number of entities concerned with public purpose, coupled with an ever-expanding impact upon domestic economic factors  that the rule of flexibility and the avoidance of a fixed standard has been formulated. As appears in Jersey City Redevelopment Agency,
* * * There is no precise and inflexible rule for the assessment of just compensation. The Constitution does not contain any fixed standard of fairness by which it must be measured. Courts have been careful not to reduce the concept to a formula. The effort has been to find working rules and practical standards that will accomplish substantial justice such as, but not limited to, market value. United States v. Cors, supra, 337 U.S. [325] at 332, 69 S.Ct. 1086, 93 L.Ed. [1392] at 1398; 27 Am. Jur.2d, supra, § 267, pp. 55-57. [58 N.J. at 383-384]
As has been said, the establishment of a relationship of indemnification to just compensation is accordant with constitutional and legislative mandate. The Constitution speaks merely in terms of just compensation. N.J. Const. (1947), Art. I, par. 20. The Legislature, in defining the duties of condemnation commissioners in N.J.S.A. 20:1-9, supplies the following informative instruction:
* * * Thereafter they [the condemnation commissioners] shall meet at the time and place appointed and proceed to view and examine the land or other property and make a just and equitable appraisement of the value of the same, and an assessment of the amount to be paid by the plaintiff for the land or other property and damages as aforesaid, * * *. [Emphasis supplied]
Consequential damages for remainder lands have long been allowed. State v. Gallant, supra. Legislative concern for the hardship inflicted in removal cases has been statutorily expressed in N.J.S.A. 27:8-7 and -8 and 52:31B-4.
The Legislature cannot in any event constitutionally mandate the payment of less than "just compensation" as the courts determine that to be. Jersey City Redevelopment Agency v. Kugler, supra.
*480 In thus holding that a property owner may demonstrate the value of his property for condemnation purposes as enhanced by industrial equipment which is part of a functional unit therein, or that he may prove as damages in lieu thereof the reasonable moving expenses, we do not suggest that both are available. To the contrary the allowance of both would exceed just compensation and constitute an unfair penalty to the condemnor. As a matter of fact, in the event the condemnor is willing to pay the value of the property as enhanced by the personalty in place, the election as to whether the personalty may be removed should be that of the condemnor and not of the condemnee. This is no more than to say that if the condemnor is willing to buy the personalty, it should be permitted to do so. Otherwise, as appears from all the foregoing, it should be compelled to pay removal expenses without undertaking the unfair burden of the value of the property as enhanced by the personalty.
Consistent with the legislative formula of the cost of the taking and damages with respect to the land or other property taken, the moving expenses may in no event exceed the value attributed to enhancement of the value of the property by the personalty. We are satisfied that these limitations do not present a danger of the condemnee receiving less than just compensation.
Reversed and remanded for a new trial in conformity with the foregoing.
NOTES
[1] Defendants, in their brief, "do not take the position" that the rule allowing moving costs, said by them to be extant "in some jurisdictions," should "apply in this action." But the offer was made, and the objection sustained. In view of the fact that the personalty was removed, we believe we must consider the problem.