116 N.J. Super. 305 (1971)
282 A.2d 71
STATE OF NEW JERSEY, BY THE STATE HIGHWAY COMMISSIONER [NOW STATE DEPARTMENT OF TRANSPORTATION], PLAINTIFF,
v.
BOARD OF EDUCATION OF THE CITY OF ELIZABETH, IN THE COUNTY OF UNION, A BODY CORPORATE OF NEW JERSEY; CITY OF ELIZABETH, IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 24, 1971.
*309 Mr. Peter L. Hughes, III, for plaintiff (Mr. George F. Kugler, Jr., Attorney General, attorney).
Mr. Raymond D. O'Brien for defendant Board of Education of the City of Elizabeth, et al.
FELLER, J.S.C.
This is an appeal from an award of $3,700 by the condemnation commissioners on December 19, 1967. By stipulating this case was tried by the court without a jury.
There is no question about the fact that the State had the right to condemn under the terms of Art. I, par. 20, of the 1947 N.J. Constitution.
Plaintiff, the State of New Jersey, by the State Highway Commissioner (now the State Department of Transportation, hereinafter referred to as the State), contends that in the planning of Interstate Route 278 it has acquired a portion of property owned by defendant Board of Education of the City of Elizabeth (hereinafter referred to as the Board), located at the northeast corner of Richmond Street and Cole Place in the City of Elizabeth. Located on the tract is William F. Halloran Elementary School No. 22.
The parcel acquired by the State is a triangular-shaped parcel at the intersection of the streets aforesaid. This propperty has a dimension of 70 feet on Richmond Street and *310 120 feet on Cole Place, containing 2,034 square feet. It also acquired a slope easement extending 55 feet on Cole Place and 158 feet on Clifton Street.
The State further contends that after this taking there remains to the Board 158,966 square feet and all the improvements and that the highest and best use for the subject property is its present use as a public school and playground.
The Board contends that it is the owner and operator of the tract on which is located the said William F. Halloran Elementary School, originally located on Cole Place in the City of Elizabeth. It further contends that from its inception in 1951 the school was designed for the education of pupils from kindergarten through the sixth grade, involving children whose ages run from 4 years, 9 months to approximately 12 years.
Under its right of eminent domain the State, beginning in the summer of 1965, proceeded to take a portion of the Board's school property, as well as other property owned by others in the area.
Defendant contends that plaintiff so conducted its construction work and subsequent realignment of the roadway in carrying out the planning of Interstate Route 278 that it isolated defendant's school property on a virtual peninsula surrounded on three sides by highways and/or highway access roads.
Defendant argues that this taking of a portion of its property and the abutting roadways has interfered with the efficiency of the remaining property as an elementary school. Defendant contends that this has caused (a) noxious fumes and serious problems of air pollution; (b) extreme noise from surrounding traffic which will so interfere with the teaching process and oral control of pupils within the school building as to nullify any effective education program; (c) traffic noises that will hinder and render ineffective the outdoor physical education program of the school and create a serious safety problem to pupils using the outdoor play area which is close to the highway termed "Alternate Route *311 No. 1-9," and (d) extreme danger to pupils between their homes and the school.
Defendant also contends that because of the cumulative effect of the above, the beneficial use of the remaining land and buildings for educational purposes has been impaired or destroyed and that this amounts to a taking of its property. It further claims damages for the expense of fencing the property and the expense of "busing" for the safety of the children.
The condemnation commissioners considered only the value of that portion of defendant's land actually taken by plaintiff. They fixed a value of $3,700 on the parcel.
At the trial it was stipulated that as to the issue of damages, if plaintiff's contentions were accepted, the award would be that of the commissioners; otherwise the court might accept all or part of defendant's claim of damages.

I
Defendant Board contends that the cumulative effect of the taking on its remaining lands and building, as stated supra, amounts to a taking of said remaining land and buildings. This court disagrees with this contention. There was no physical invasion by the State of the remaining lands; consequently there was no taking under the laws of this State.
In Board of Education, Morristown v. Palmer, 88 N.J. Super. 378, 390 (App. Div. 1965), in which plaintiff requested that the court order the State to condemn the school property, the court reviewed very thoroughly a situation similar to the one under consideration. The court said that the damage to plaintiff's school property, to the joint of total or substantial destruction of its beneficial use as a school facility, would (assuming plaintiff could prove the allegations made in the complaint and supporting affidavits) be different in kind from the damage suffered by other property owners in the area. Cf. Richards v. Washington *312 Terminal Co., 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088 (1914). The court stated that if plaintiff was correct in its assertion, it would be faced with the dilemma of remaining where it was and carrying on as best it could at the risk of the children's lives and the certainty of substandard education, or removing the entire school to another location.
The court then recited the allegations of the complaint which, in substance, were as follows: extreme danger to pupils between their homes and the school, whether on foot or on bicycles; noxious fumes and serious problems of air pollution; extreme noise from surrounding traffic which would interfere with the teaching process and oral control of the pupils within the school building so as to nullify any effectual educational program; a serious safety problem to pupils using the outdoor play area, and traffic noises that would hinder and render ineffective the school's outdoor physical education program because verbal instruction would be limited to three to five feet when trucks are using the highway.
Plaintiff, in Morristown, claimed that because of the cumulative effect of these limitations, hazards and interferences, the beneficial use of the school lands would be destroyed, and this in effect amounted to a taking of the property itself.
The Appellate Division remanded the case to the trial court for a hearing on the merits. However, on appeal the Supreme Court, 46 N.J. 522 (1966), held that the briefs and oral arguments submitted, as well as an additional drawing of the project as presently planned in the George Washington School area (which was not presented to the Appellate Division) revealed that "there will be no physical invasion of the school premises, and (a) the school will not be encircled by the highway or the access roads or ramps." The court further stated that a study of the entire record gave rise to the inescapable conclusion that at the present time the issue sought to be presented by the board of education was purely hypothetical. The court said that the effect *313 on the school, as a school, if any, was speculative and would continue to be so until the construction work was completed and sufficient time had elapsed to permit an informed judgment to be made as to whether any damage had been suffered by the board in the constitutional sense of a taking. The court then stated that the action was premature.
In the present case there was no taking of the 158,966 square feet remaining to the Board after the original taking of 2,034 square feet. There was no physical invasion of this remaining tract and there was no evidence that this property was encircled by the highway or the access roads and ramps.
However, in Morristown, the Supreme Court did not rule out the question that plaintiff's allegations (set out above) would not be considered as elements of damages in a subsequent suit. Therefore, in the present case it will be necessary to consider defendant's contentions that the remaining land and building have been damaged as a result of the partial taking by the State. The construction work is completed, or substantially so, and sufficient time has elapsed to permit an informed judgment to be made as to whether any damages have been suffered by the Board with reference to the remaining tract as a result of the partial taking by the State.

II
In the past it has been customary to try to locate schools in quiet neighborhoods. However, in the larger municipalities at the present time, trucks, "hot rods," motorcycles, interstate highways, jet aircraft and industry have often brought sound pollution to a school. The question then arises: In these modern times, how much of an increase in sound can be tolerated in the classroom before steps must be taken to alter the structure of the school in such a manner that the noise level is abated on the inside? If this is the only feasible course, a second question presents itself: Who is to pay for these alterations?
*314 Defendant contends, among other things, that because of the cumulative effect of the allegations set out supra, the beneficial use of the remaining lands and building for educational purposes has been impaired. If plaintiff is able to prove this, then it would be entitled to damages to the remainder of said property. See Board of Education, Morristown v. Palmer, supra.
In a proper case, such as a taking of institutional property for highway purposes, such as realty on which a church or school is situated, the court would have no hesitation in considering the detrimental effect of increased highway noise on the remaining property, since this is a factor which a prudent investor would consider in evaluating the economic worth of the property. Dennison v. State, 48 Misc.2d 778, 265 N.Y.S.2d 671 (Ct. Cl. 1965). A landowner has a right to be free from unreasonable interference caused by noise even though the noise vector may come from some direction other than perpendicular. Thornburg v. Port of Portland, 233 Or. 178, 376 P.2d 100 (Sup. Ct. 1962). See also Dean v. State Road Department, 165 So.2d 257 (Fla. D. Ct. 1964).
In addition to pollution by sound, pollution of the air by gases and smoke is considered "matter," just as solids or liquids. If they are emitted into the air and allowed to pass over remaining land so as to deprive the owner of the beneficial use of the same, it may be an element of damage if it is the result of a taking. This applies to extreme cases of pollution of air by smoke, noxious odors and gases. See 2 Nichols, Eminent Domain (3d ed.), §§ 6.31 and 6.31-1(1). See also Cogswell v. New York, etc, R.R. Co., 103 N.Y. 10, 8 N.E. 537 (Ct. App. 1886).
A distinction must be made, however, between damages to a remainder area when part of a tract is physically appropriated, and damages to a tract no part of which is physically appropriated. In the former case it matters not that the injury is suffered in common with the general public. The sole test is whether the damage complained of is *315 directly attributable to the taking. 2A Nichols, op. cit., § 6.4432(2). See also Mississippi State Highway Comm'n v. Colonial Inn, Inc., 246 Miss. 422, 149 So.2d 851 (Sup. Ct. 1963). The proximate effect of the taking is also to be considered in ascertaining the value of the remaining land. Ridgewood v. Sreel Investment Corp., 28 N.J. 121 (1958).
However, it is evident from a review of the record that the proximate effect of the damages claimed by plaintiff was not caused by the taking of the 2,034 square feet  only. The use of this particular parcel by the State does not by itself generate and cause the serious problem of noise and air pollution claimed by defendant, but the use of the parcel, together with the use of other parcels of land in the area owned by others, does have the cumulative effect of causing this problem. The extreme sound and air pollution complained of by plaintiff is caused by traffic on the highway and all the access roads and ramps which are part of the construction of Route 278 in the vicinity of the school. The taking of defendant's property and the taking of property owned by others would not have been necessary if the State were not involved in the planning and construction of Route 278  and plaintiff in his contentions states that the State acquired this portion of defendant's property in the planning of that route.
An examination of exhibits P-2, P-3, D-2 and D-3 reveals the planning and construction of the various highways, roads and ramps that are necessarily connected with the construction of Interstate Route 278. It appears that the partial taking of defendant's property was part of the unitary single use  namely, Route 278.
Where part of an owner's land is taken for a public improvement such as this, and the part taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put, the owner is entitled to recover the full damage to his remaining property due to such public improvement, even though portions of the public improvement are located on land taken from *316 surrounding owners. The determination of whether the part taken constitutes an integral and inseparable part of the whole improvement ordinarily is a question for the trier of the facts. City of Crookston v. Erickson, 244 Minn. 321, 69 N.W.2d 909 (Sup. Ct. 1955); Andrews v. Cox, 129 Conn. 475, 29 A. 2d 587 (Sup. Ct. Err. 1942).
The court in Crookston, in discussing this principle, stated:
* * * the owner of the remaining area is not ordinarily entitled to recover for damage caused his remaining land by the taker`s use of property acquired from adjoining land owners even though his and all property taken from others is used to further the same project.

* * * * * * * *
However simple this general rule appears on the printed page, its application to specific fact situations presents grave problems. It has been characterized by one commentator on the subject as "an attempt to separate the inseparables." 1 Orget, Valuation under Eminent Domain (2 ed.), § 56, p. 263. [69 N.W.2d at 913]
The court then stated that an examination of the cases applying the rule which apportioned the injury to the remainder area between that caused by the use of land taken from the owner of the remainder tract and that caused by the use of land taken from others, failed to dissuade it from the view that such apportionment can seldom be realistically made.
Furthermore, in Andrews, supra, the court stated:
"* * * Where the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put, the effect of the whole improvement is properly to be considered in estimating the depreciation in value of the remaining land. * * *
As the court said in Crookston, supra, "The determination of whether the part taken constitutes an integral and inseparable part of the whole improvement ordinarily is a question for the trier of the fact." As the trier of the facts, it is the opinion of this court  after reviewing the *317 testimony and exhibits  that the part taken from defendant Board does constitute an integral and inseparable part of the whole improvement; that it was part of the unitary single use, namely, Interstate Route 278.

III
When a part of lands is taken by proceedings in eminent domain, the owner of the land is entitled to the value of the land taken and damages to the remaining land resulting from such taking. Braidburn Realty Co. v. East Orange, 107 N.J.L. 291 (E. & A. 1930). In other words, where only a part of an owner's land is taken, as in this case, he is entitled to be compensated not only for the value of the land taken but also for any diminution in the value of the remaining land which may be attributed to the taking. Ridgewood v. Sreel Investment Corp., supra, 28 N.J. 121.
In State by Commissioner of Transportation v. Birch, 115 N.J. Super. 457 (App. Div. 1971), the court said:
Defendant was entitled to just compensation. N.J. Const. (1947), Art. I, par. 1. In general, had the whole of her lands been taken, her damages would have amounted to the fair market value of the property as of the date of the taking, determined by what would be agreeable between a willing seller and a willing buyer, neither being under any compulsion. State v. Speare, 86 N.J. Super. 565, 572 (App. Div. 1965), certif. den. 45 N.J. 589 (1965). Where, as here, there was only a partial taking, the measure of damages was the difference between the fair market value, as above defined, of the whole property before the taking and the fair market value of the remainder after the taking. Port of N.Y. Authority v. Howell, 59 N.J. Super. 343, 348 (Law Div. 1960), aff'd 68 N.J. Super. 559 (App. Div. 1961), certif. den. 36 N.J. 144 (1961). The proximate effect of the taking was also to be taken into consideration in ascertaining the value of the remaining land. Ridgewood v. Sreel Investment Corp., 28 N.J. 121 (1958); State v. Speare, supra, 86 N.J. Super. at 573. Since the denial of access to the freeway resulted in the greater part of defendant's property being landlocked, the cost of ameliorating or curing that condition was an important factor to be considered in arriving at its fair market value. [at 462-463]
*318 However, as a practical matter it is not always possible to assess damages to the remaining lands after a partial taking according to fair market value. When, because of its unusual character, property has no market value in the ordinary accepted sense of the term, resort may be had in condemnation actions to other means to determine compensation due the owner for his loss. School houses, churches, court houses and the like are special purpose properties not ordinarily bandied about in the market place, and something other than market value must be employed in ascertaining their worth in condemnation actions. City of Wichita v. Unified School District No. 259, 201 Kan. 110, 439 P.2d 162 (Sup. Ct. 1968).
Where property already devoted to a public use by one agency of government is partially taken in condemnation by another agency for some unrelated public purpose, the rule is that just compensation should be paid for damage to the remainder which will put it in as good a position as if there were not partial taking, City of Wichita, supra; Mayor, etc., of Baltimore v. United States, 147 F.2d 786 (4 Cir. 1945), in order to restore the public agency to its prior state of efficiency in discharging its public functions. This is especially true (as in the present case) where defendant Board is under a legal obligation to educate children and the substitute or replacement facility must be factually necessary. See N.J. Constitution 1947, Art. I, par. 20. Therefore, under such circumstances damages proved are not to be diminished by deductions for depreciation and obsolescence.
The true test is whether any damages awarded as a result of property taken in eminent domain proceedings will restore the overall capacity of the system to the same state of readiness and utility as it possessed prior to the taking. See City of Wichita, supra. In the present case, before the partial taking the Halloran School was adequately performing its function as a place of learning, without suggestion of debility, regardless of when it was constructed. Also in *319 the present case as well as in other cases, when school property is condemned it is not possible to determine fair market value because there are no comparable sales. Nor is this type of property income-producing, so that in law and in fact there is no market value for the facility or the school.
The damage where school property is involved must be directed to the restoration of a utility rather than to a mere dollar-and-cents value. In some states, in the absence of a constitutional or statutory provision, the market value principle is the only method of determining compensation, and so compensatory damages in condemnation cases are not permitted. Masheter v. Cleveland Board of Education, 17 Ohio St.2d 27, 244 N.E.2d 745 (Sup. Ct. 1969). However, the New Jersey statute, N.J.S.A. 20:1-9, permits the award of damages in such cases, and our courts have held that such awards are permissible under certain circumstances.
In Housing Authority of Clementon v. Myers, 115 N.J. Super. 467, 477, 478 (App. Div. 1971), the court stated that the legislative and constitutional mandates center around the requirement of "just compensation." The court further said that the ascertainment of what is just compensation is a judicial function, United States v. New River Collieries Co., 262 U.S. 341, 343, 344, 43 S.Ct. 565, 67 L.Ed. 1014 (1923), and that a margin of discretion exists for both courts and the legislature in order that they may assure just compensation  each may in this effort prescribe a rule of damages more favorable to the landowner than that which would satisfy the minimum requirement of the Constitution. Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374, 384 (1971). The court further said that just compensation has been equated with fair market value, and value used in that context has been variously described and said to have many meanings. Trenton v. Lenzner, 16 N.J. 465, 477 (1954).
In Lenzner, the court said:
*320 * * * More significant is the increasing tendency displayed in recent cases of giving fair and weighty consideration to the consequential loss of business as an element of the compensation rightly due the owner. See Kimball Laundry Co. v. United States, [338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765], supra; Housing Authority of City of Bridgeport v. Lustig [139 Conn. 73, 90 A.2d 169], supra; 18 U. of Chi. L. Rev. 349 (1951); 35 Va. L. Rev. 1059 (1949). [at 477.]
Ten years later, in State v. Gallant, 42 N.J. 583 (1964), the court said:
There is no logical reason, however, why a condemnee although compensated for the market value of his land and buildings should suffer all other loss incidental to the taking thereof for the public benefit * * *. [at 588]
The court in Housing Authority of Clementon, supra, very clearly stated that it is in order to accommodate such an awakening to contemporary realities and such an adjustment to our changing times  because of an increasingly broad utilization of the power of eminent domain by a vastly greater number of entities concerned with public purpose with its ever expanding impact on domestic economic factors  that the rule of flexibility and the avoidance of a fixed standard has been formulated. Thus there is no precise and inflexible rule for the assessment of just compensation. Jersey City Redevelopment Agency v. Kugler, supra. The Constitution provides for just compensation. N.J. Const. 1947, Art. I, par. 20. The court further stated that the Legislature, in defining the duties of condemnation commissioners under N.J.S.A. 20:1-9, supplied the following information:
* * * Thereafter they [the condemnation commissioners] shall meet at the time and place appointed and proceed to view and examine the land or other property and make a just and equitable appraisement of the value of the same, and an assessment of the amount to be paid by the plaintiff for the land or other property and damages as aforesaid * * *. [Emphasis added]
Consequential damages for remainder lands have been allowed. State v. Gallant, supra. The Legislature cannot *321 in any event constitutionally mandate the payment of less than "just compensation," as the courts determine that to be. Housing Authority of Clementon, supra, 115 N.J. Super. at 479. The statute, N.J.S.A. 20:1-9, authorizes the condemnation commission  in a proper case  to assess damages.
Therefore defendant Board would be entitled to compensatory damages  that can be proved  to the land and building remaining as a result of the partial taking by the State.

IV
The testimony of the expert sound engineer, Lewis Goodfriend, was to the effect that there was an increase in the decible level from 1966 to 1971 due to the increase in traffic which impaired the teaching conditions in the school  in particular, on the side of the school facing the highway construction.
A further review of the testimony of the sound engineer and of his 1966 report indicates a comparison of the measurements from the same locations in the school, rooms 18 and 101 in the front of the building, and room 105 in the rear. Minimum and maximum sound pressure levels were measured in each room, both with the windows open and windows closed. On the basis of these measurements, the sound levels existing within the classrooms (18 and 101) with the windows closed would make the teaching of a class extremely difficult. When warm weather requires that the windows be open, the operation of classes in those rooms would be virtually impossible. Even if no conversation were required, concentration by the students in these classrooms under these conditions would be extremely difficult.
A comparison of the noise levels of April 1971 with those measured on July 5, 1966 shows that the interior classroom sound levels in rooms 18 and 101 were two to three times louder than in 1966, even with the windows closed. With the windows open, noise levels were as much *322 as eight times louder than was measured in 1966. Goodfriend said that with the windows open room 18 is unusable; that the sound level conditions would be intolerable for teaching purposes. Room 101 is marginal and would require considerable effort on the part of the teacher. He also said that room 105 in the rear of the building is usable and essentially unchanged. He then explained in detail what changes would be necessary to "soundproof and air condition" the building. Charles Updike, of the State Department of Education, said that the ill effect on the school was due to the traffic, the noise, the exhaust fumes and the distractions that resulted from the highway construction and highway use in this particular area.
There was testimony from various teachers concerning the adverse conditions which made it difficult to teach effectively, especially in classrooms in the front of the school facing the highway construction and use. There was also testimony from the teacher of the handicapped children concerning the noise and sound pollution on the health and attitude of his pupils. There was also evidence as to the excessive air pollution caused by exhaust fumes due to the heavy traffic. Some of these teachers testified that these conditions did not exist before the highway construction.
Testimony of County Superintendent of Schools West indicated that the school has a normal lifetime of 50 to 60 years, but it has effectively been destroyed after only 20 years as an elementary school district and building.
Elizabeth Superintendent of Schools Dwyer testified as to the cost of busing the regular students and other students to the school during the construction phase and thereafter.
Architect McMurray testified regarding the cost of treating the windows, building and grounds as recommended by the sound engineer, together with an 8% architect's fee. He said that the landscape work was necessary; that this included 50 minor and 20 major trees and shrubs, which would be used as a filtration factor to alleviate the air pollution.
*323 There was no physical invasion of the play area bounded on the west by Brunswick Avenue and on the north by Clifton Street, except a slight slope easement on Clifton Street at its intersection with Cole Place. Although the traffic on Brunswick Avenue and Clifton Street may have been increased somewhat, neither street is part of the highway or access roads or ramps constructed in connection with Route 278.
This court has held, supra, that there was no taking of the remainder after the partial taking of the triangular part in the front of the school building. There was no evidence of what would be necessary in the play area to eliminate some of the difficulties complained of. Therefore this court cannot award compensatory damages on this claim.
It is true that the taking of other property in the area has had its effect on the area as a school district and has contributed to the diminution of the number of pupils in the school. As a result, it has been necessary to "bus" pupils to the school from other areas because of distance and the increased traffic due to the increase in the number of highways, access roads and ramps in the area. Furthermore, as long as the school is in operation it will probably be necessary to continue with the "busing" of the pupils. Under the circumstances in this condemnation case, the State cannot possibly be charged with the expense of busing which will probably continue into the indefinite future.
The school must continue to be used in the City of Elizabeth because it would require a substantial investment to build new schools and the busing of pupils is a necessary corollary of this requirement. Thus the busing of the students cannot be said to be an item of damages to the remaining land and building as a result of the partial taking by the State.
In a condemnation case of this type the landowner is entitled to compensatory damages based on the necessity and cost of putting the remaining property in shape to meet the changed conditions caused by the highway. See Sterner, *324 State Highway Commissioner v. Nixon, et al, 116 N.J.L. 418 (E. & A. 1936). The damages assessed should be based on replacement, renovation, construction or alteration costs of the facility. See Crookston, and Wichita, supra; see also State v. Gallant, supra. Furthermore, N.J.S.A. 20:1-9 provides for the assessment of damages for the land or other property.
Thus it is the opinion of this court that the expense involved in "busing" pupils to and from the school is not an item of damages to the remaining property.
The beneficial use of the remaining land and buildings for educational purposes has not been destroyed as a result of the partial taking. However, the beneficial use of same has been impaired. The evidence reveals that the installation of a soundproofing and air conditioning system in the school will substantially relieve the unfavorable conditions caused by the air and sound pollution. Furthermore, the school is being utilized at the present time for teaching without the above mentioned improvements and the outdoor physical education program in the play area is also being conducted at the present time despite some difficulties and inconveniences.
The evidence submitted by the architects, McMurray and Grove, shows the expenses involved to remedy the conditions set out above. They are:

1. Air-conditioning classrooms and offices ........... $ 94,350.00
2. Landscape work .................................... 3,187.00
3. Alteration of window treatment for soundproofing
 as per Goodfriend's testimony ..................... 51,000.00
 ___________
 Total ......................................... $148.537.00
 Added to this amount is an architectural
 fee of 8%, or ..................................... 11,882.96
 ___________
 This makes a total of ......................... $160.419.96

The estimate is as of May 7, 1965, the date the complaint was filed and the date of the commencement of this *325 action. The statute, N.J.S.A. 20:1-9, provides in effect that damages are to be assessed as of the date of the commencement of the action for condemnation. As stated the condemnation commissioners awarded the sum of $3,700, which sum was deposited with the court.
Defendant Board is therefore entitled to the condemnation award of $3,700 and compensatory damages in the sum of $160,419.96, making a total of $164,119.96, together with costs.
The parties have stipulated that the sum of $3,700 was the value of the part taken. In State by State Highway Commissioner v. Fisher, 54 N.J. Super. 274 (App. Div. 1959), the court stated:
Allowance by the court of interest on an award serves the purpose in this State of compensating an owner for any loss suffered by him by reason of delay between the actual taking and the ultimate ascertainment of damages, and thereby assuring him of the full measure of "just compensation" required by the Constitution (1947, Art. I, par. 20; 1844, Art. I, par. 16) in view of the limitation of the implementing legislation fixing the date of commencement of the action as that as of which condemnation Commissioners shall determine value and the amount to be paid (R.S. 20:1-9), as amended; cf. R.S. 20:1-2, as amended). Bergen County Sewer Authority v. Borough of Little Ferry, 15 N.J. Super. 43 (App. Div. 1951); see State v. Jones, supra (27 N.J. [257], at page 261). But such allowance must be determined "according to the considerations of equity and fair dealing in order to accomplish justice in each particular case" (Bergen County Sewer Authority v. Borough of Little Ferry, supra (15 N.J. Super., at page 52); New Jersey Highway Authority v. Ellis, 24 N.J. 1, 7-8 (1957); In re Parking Authority of Hackensack, 30 N.J. Super. 534, 543 (App. Div.. 1954)). In the manner in which this case reaches us and on the record before us, we need not be concerned with the difficult problem, considering the present state of our legislation adverted to above, of the proper method of ascertainment of just compensation where there has been a substantial delay between the taking and the award. See 13 Rutgers L. Rev. 284 (1958) and State v. Jones, supra (27 N.J. at page 263). [at 280-281]
The awarding of interest does not lend itself to rigid guidelines, but rather is best considered on a case-by-case basis in order to determine compensation which is just. Where condemnation proceedings restrict the profitable use *326 or enjoyment of the property, interest ordinarily should be allowed. See State v. Nordstrom, 54 N.J. 50, 54, 55 (1969).
Thus in addition defendant Board is additionally entitled to interest at 6% a year on the sum of $160,419.96 from July 7, 1966, the date of the Declaration of Taking [which was two days after the sound levels were first tested in the school] to the final date of the trial in this matter, which was June 24, 1971. See Housing Authority of Hoboken v. Segal, 112 N.J. Super. 359 (App. Div. 1970).
Judgment will be entered in favor of defendant Board and against plaintiff State in the sum of $164,119.96 together with costs and interest at the rate of 6% per year from July 7, 1966 to June 24, 1971 on the sum of $160,419.96.